548 F.2d 476
 MAHER TERMINALS, INC., Employer and American Mutual
Liability Insurance Co., Carrier, Petitioners,
v.
Peter FARRELL, Respondent,
Director, Office of Workers' Compensation Programs, U. S.
Department of Labor, Party Respondent.
 No. 76-1145.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 3, 1977.
Decided Jan. 17, 1977.
 
 Thomas J. Ingersoll, Philadelphia, Pa., for petitioners.
 Martin L. Katz, Brooklyn, N. Y., for respondent.
 Joshua T. Gillelan, II, Office of the Sol., U. S. Dept. of Labor, Washington, D. C., for party respondent.
 Thomas J. Ingersoll, Deasey, Scanlan & Bender, Ltd., Philadelphia, Pa., for petitioners.
 Martin L. Katz, Brooklyn, N. Y., Joshua T. Gillelan, II, Office of the Sol., U. S. Dept. of Labor, Washington, D. C., for respondents.
 Before ALDISERT and WEIS, Circuit Judges, and HUYETT, District Judge.*
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The question for decision is whether Peter Farrell, a clerk in a maritime terminal office whose principal duties in the office require him to examine documents presented by outside truckers, is an employee "handling cargo" as contemplated in Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629 (3d Cir. 1976). If so, he is covered by the provisions of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901-50, as amended, Pub.L. No. 92-576 (1972). The Benefits Review Board of the United States Department of Labor found that Farrell was covered under the Act. Farrell's employer has petitioned for review. We grant the petition.
 
 
 2
 Sea-Land Service, this court's definitive interpretation of employee and employer concepts under 33 U.S.C. § 902(3) and (4), held that coverage under the Act was intended by Congress to extend to those employees "handling cargo" (1) after its delivery from another mode of transportation for the purpose of loading it aboard a vessel or (2) while it is in the process of being discharged from a vessel and before its delivery to the place where the next mode of transportation will pick it up. Ibid., 540 F.2d at 638. Our present inquiry is, therefore, extremely limited: we are to determine whether it was the congressional intent to place Farrell's particular occupation within the Act's orbit of coverage, as delineated in the Sea-Land Service formulation.
 
 
 3
 The relevant findings of the administrative law judge include the finding that Farrell "is primarily (if not 'purely') a clerical employee", as well as the following particulars:
 
 
 4
 8. Claimant, a member of Clerks' and Checkers' Local No. 1 of the International Longshoremen's Association, was engaged on the day of the accident as a temporary delivery clerk.
 
 
 5
 9. As a delivery clerk, Claimant worked in an office in a building which adjoins a container shed and which is situated about 2500 feet from the water's edge.
 
 
 6
 10. The function of the delivery clerk is to handle the paper work necessary in the delivery of cargo to truckmen for removal from the terminal. When a truckman presents papers to him, he checks out the documents to see if the cargo is properly released. He also gives out container stripping sheets. Any discrepancies that might appear between markings on the stripping sheet and markings on the actual cargo are customarily resolved by physical examination and comparison performed by checkers or location men in the shed.
 
 
 7
 11. The temporary delivery clerk's function is essential to the removal from the terminal of cargo that has been discharged from vessels or stripped from containers, and it is an integral part of stevedoring operations.
 
 
 8
 12. Except for rare occasions, such as personal delivery of a package to the Captain's cabin, a clerk's duties would not require him to go aboard any vessel.
 
 
 9
 13. Occasionally, a temporary delivery clerk may go to the shed or loading platform to examine markings on cargo which appear to differ from the markings on the delivery order.
 
 
 10
 14. Claimant had worked for the Employer either in the capacity of temporary clerk or checker, depending upon day-to-day needs and availability.
 
 
 11
 We are greatly assisted in our analysis of these findings by the language of both the House and Senate Reports which accompanied the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: "The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel . . .. Thus, . . . purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo (would not be covered). However, checkers, for example, who are directly involved in loading or unloading functions are covered by the new amendment." S.Rep. No. 92-1125, 92d Cong., 2d Sess. 13 (1972); H.R.Rep. No. 92-1441, 92d Cong., 2d Sess., 1972 U.S. Code Cong. & Admin.News 4708 (quoted extensively in Sea-Land Service, supra, 540 F.2d at 637-38.)
 
 
 12
 Here, the Benefits Review Board reasoned that the intention of Congress was not to exclude all clerical employees from the Act's coverage, but rather to exclude only those "purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo." Faher v. Maher Terminals, BRB Decision No. 75-183 (Dec. 10, 1975), citing S.Rep. No. 92-1125, 92d Cong., 2d Sess. 13 (1972); H.R.Rep. No. 92-1441, 92d Cong., 2d Sess. 11 (1972). Under this view, the legislative references to the Act's coverage of checkers is not to be read as an indication that other clerical employees who are involved in loading or unloading are excluded from coverage.
 
 
 13
 Although we have no quarrel with the Board's general reasoning, we do fault its application to the facts in this case. If an office worker, or a clerical employee, such as Farrell, is to be included in the Act's coverage, then it is difficult to conceive of any clerical position in maritime employment that would not be covered. Under the Board's formulation, a clerical employee who handles documents relating to maritime cargo is "directly involved in the loading and unloading functions." This interpretation, we fear, flies in the face of the clearly stated legislative intent.
 
 
 14
 Farrell worked in an office. He did not work on the pier, in the yard, or on the dock as a checker (also referred to as a tallyman). See, e.g., Lind v. Independent Pier Co., F.2d (No. 76-1229, 3d Cir. Jan. 3, 1977). He came within the congressional proscription of a purely clerical employee whose job did not require him to participate in the loading or unloading of cargo. That on occasion he left the office to examine markings on cargo, and that in the past he had worked as a checker is not controlling. What is controlling is the nature of his primary duties. As we perceive the congressional intent, that is the sole test. Farrell's primary duties being that of a clerk and not a checker, he is excluded from coverage.
 
 
 15
 The petition for review will be granted.
 
 
 
 *
 Honorable Daniel H. Huyett, 3rd, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation