567 F.2d 593
 DRAVO CORPORATION and Liberty Mutual Insurance Company, Petitioners,
v.
Gregory Winston BANKS, and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 77-1433.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Dec. 5, 1977.
Decided Dec. 16, 1977.
 
 Frederick N. Egler, Robert S. Garrett, Egler & Reinstadtler, Pittsburgh, Pa., for petitioners.
 
 
 1
 Daniel W. Cooper, Christopher Lepore, Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., for respondent Gregory Winston Banks.
 
 
 2
 Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C., for respondent Director, OWCP.
 
 
 3
 Submitted Under Third Circuit Rule 12(6) December 5, 1977.
 
 
 4
 Before ALDISERT and WEIS, Circuit Judges, and CHRISTENSEN, District Judge.*
 
 OPINION OF THE COURT
 
 5
 ALDISERT, Circuit Judge.
 
 
 6
 This petition for review of an order of the Benefits Review Board by an employer and its workers' compensation insurance carrier presents the question whether one who is employed by a shipbuilder as an unskilled laborer is covered by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. Because the nature of respondent Banks' primary duties does not satisfy the status requirement of the LHWCA, we will set aside the order of the Benefits Review Board which afforded Banks coverage under the Act.
 
 I.
 
 7
 Gregory Banks works as a "laborer" at Dravo Corporation's Engineering Works Division in Neville Island, Pennsylvania. There is no serious disagreement among the parties as to his job functions: he does essentially unskilled jobs related to plant maintenance, such as cleaning up debris. On the day he was injured, Banks had been assigned to spread salt on walkways and steps wherever he saw ice. This included areas in the plant's boat yard. Banks injured his neck and shoulder while lifting a bag of salt, and was temporary disabled as a result.
 
 II.
 
 8
 In considering Dravo's contention that a person in Banks' position is not covered under the terms of the LHWCA,[1] we are guided by the Supreme Court's recent opinion in Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), which provides us with the relevant inquiries in determining whether coverage should be extended: both the situs of the injury and the status of the injured must be considered. We note preliminarily, however, that in arguing that Banks is not covered, Dravo contends that the Act did not extend coverage to a new class of workers, but rather merely eliminated the disparity in benefits awardable to the same person depending upon whether he or she was located on land or sea when the injury occurred. Under this interpretation, since Banks' jobs are not performed on navigable waters he was not covered prior to 1972 and cannot be covered now. But this approach is refuted by the very first sentence and citation in Northeast Marine Terminal : "Congress amended the (LHWCA), in substantial part to 'extend the Act's coverage to protect additional workers.' S.Rep.No.92-1125, 92nd Cong., 2d Sess., 1 (1972)." At 251, 97 S.Ct. at 2351 (emphasis added). Nevertheless, for reasons stated below, we determine that Banks is not covered under the Act.
 
 A.
 
 9
 As to situs, 33 U.S.C. § 903(a) requires that the injury occur upon "navigable waters . . . including any . . . adjoining area customarily used by an employer in . . . building a vessel." Dravo's Neville Island facility is devoted to the construction and launching of barges and towboats. Its operations are described in the earlier opinion of this court in Dravo Corp. v. Maxin, 545 F.2d 374, 376 (3d Cir. 1976). Because the entire area comprises a comprehensive shipbuilding operation, we have no difficulty in determining that Banks satisfied the situs requirement of the LHWCA.
 
 B.
 
 10
 We cannot make a similar determination in regard to Banks' status. The LHWCA defines covered employees as "any person engaged in maritime employment, including any . . . shipbuilder . . ." 33 U.S.C. § 902(3). In order to recover, then, Banks must fall within the statutory term "shipbuilder". Banks admits that he was not directly involved in such activities as welding parts of a ship together, but argues that since the Neville Island operation is an integrated "assembly line" shipbuilding facility, and since his job is "directly supportive of those involved in shipbuilding", he should be covered.
 
 
 11
 The "integral part" approach finds support in the cases. For example, in Northeast Marine Terminal, supra, the Supreme Court determined that respondent Blundo, a checker, was covered under the Act because his tasks were "clearly an integral part of the unloading process." At 271, 97 S.Ct. at 2361. And in Maxin, supra, this court said that Maxin's functions were "an integral part of the new ship construction activities." 545 F.2d at 380. But in each of these cases, there was a close functional nexus between the individual's job and "longshoring" or "shipbuilding", respectively. Blundo's job was to check cargo as it was removed from the ship and placed upon the pier. Maxin's work involved burning steel plates which would ultimately become bottoms and decks of barges, i. e., he was involved in the actual fabrication of ship materials.
 
 
 12
 We do not find the same close functional nexus here. Rather than drawing a parallel between Banks and someone in Maxin's position, we believe the parallel should be drawn between Banks and the excluded clerical worker in this court's recent opinion in Maher Terminals, Inc. v. Farrell, 548 F.2d 476 (3d Cir. 1977). In Maher Terminals, it was determined that a clerk in a maritime terminal office was not an employee "handling cargo" as contemplated in Sea-Land Service, Inc. v. Director, 540 F.2d 629 (3d Cir. 1976), and thus was not covered.[2] In the language of Maher Terminals, "(w)hat is controlling is the nature of (the employee's) primary duties." 548 F.2d at 478.
 
 
 13
 Banks' duties have no traditional maritime characteristics, but rather are typical of the support services performed in any production entity, maritime or not. "Plant maintenance" is required in any business. The government's brief[3] inadvertently brings out a crucial distinction in this regard. After citing the "integral part" test of Maxin, supra, it argues that Banks' function in clearing ice was "a necessary incident to the entire process of vessel construction." Clearing ice is a necessary "incident" of any operation. We suggest that in order to be covered, Banks' job should have been a necessary "ingredient " in the shipbuilding process, which it was not.[4]
 
 
 14
 Thus, under the same rationale that excluded a purely clerical worker in Maher Terminals, supra, Banks' status is not covered under the LHWCA.[5] Just as a clerical worker fell outside Congress' concern for employees who actually handled cargo, Banks cannot be viewed as coming within the statutory term "shipbuilder". He does not work on, or with, any of the component parts used in building ships.
 
 
 15
 The order of the Benefits Review Board which afforded Banks coverage under the LHWCA will be set aside.
 
 
 
 *
 Honorable A. Sherman Christensen, of the United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 Dravo also advances the argument that if the LHWCA is construed to cover all employees of a shipbuilder, it is an unconstitutional extension of the jurisdiction granted Congress over admiralty and maritime matters. This argument must be rejected as conceptually indistinguishable from the primary claim Dravo made, unsuccessfully, in Dravo Corp. v. Maxin, 545 F.2d 374 (3d Cir. 1976). There, Dravo argued that Congress could not extend coverage under the LHWCA landward to employees working in new construction. Simply to add the word "all" does not cast a new constitutional light on the argument
 
 
 [2]
 Both Maher and Sea-Land were cited, not unfavorably, in Northeast Marine Terminal, supra. 432 U.S. at 272 n. 34, 277 n. 40, 97 S.Ct. at 2362 n. 34, at 2364
 
 
 [3]
 The Director of the Office of Workers' Compensation Programs, United States Department of Labor, is a respondent in this action
 
 
 [4]
 Ingalls Shipbuilding Corp. v. Morgan, 551 F.2d 61 (1977), in which the Fifth Circuit determined that coverage should be extended to a shipfitter helper apprentice who was killed when a steel plate he was cleaning fell on him, is distinguishable in this manner. The decedent had been working on a component part of a ship to be launched
 
 
 [5]
 Language from House and Senate Reports assisted our analysis in Maher Terminals, supra, and assists us here in recognizing that Congress did not intend the 1972 amendments to extend coverage indiscriminately to all employees of a maritime enterprise:
 The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel . . . . Thus, . . . purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo (would not be covered). However, checkers, for example, who are directly involved in loading or unloading functions are covered by the new amendment.
 S.Rep.No.92-1125, 92d Cong., 2d Sess. 13 (1972); H.R.Rep.No.92-1441, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Admin.News p. 4708, quoted in Maher Terminals, supra, 548 F.2d at 477.