**McGRAY CONSTRUCTION COMPANY; Beaver Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; HARRY HURSTON, Respondents.**

No. 96–70041.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1997.

Filed May 2, 1997.

Opinion withdrawn, Sept. 3, 1997.

Reargued and Resubmitted June 1, 1999.

Filed June 22, 1999.

Roger A. Levy, Laughlin, Falbo, Levy & Moresi, San Francisco, California, for the petitioners.

John R. Hillsman, McGuinn, Hillsman & Palefsky, San Francisco, California, for respondent Harry Hurston.

Laura J. Stomski (briefed), Attorney, Joshua T. Gillelan II (argued), United States Department of Labor, Office of Workers' Compensation Programs, Washington, D.C., for the respondent.

Before: HUG, Chief Judge; THOMPSON and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The main issue in this case is whether a person who has mostly done maritime work in the past, but takes a nonmaritime job, gets compensated for workplace injury under the workers' compensation system or the Longshore and Harbor Workers' Compensation Act.[1]

We previously issued an opinion in this case [2], but withdrew it [3] after the Supreme Court overruled *Papai v. Harbor Tug and Barge Co.* on which the majority in our earlier opinion relied.[4] We now revisit the case and reach a conclusion consistent with the intervening Supreme Court decision.

## FACTS

Mr. Hurston was working as a pile driver, when a load fell from a crane and seriously injured him. His employer, McGray Construction, voluntarily paid workers' compensation benefits. Mr. Hur-

---

1. Specialists sometimes denote this as the LHWCA, but for ease of reading, we call it the Act, as it is the only statute involved.

2. *McGray Construction Co. v. Director (Hurston),* 112 F.3d 1025 (9th Cir., 1997), *withdrawn* 124 F.3d 1310 (9th Cir., 1997).

3. *McGray Construction Co. v. Director (Hurston),* 124 F.3d 1310 (9th Cir., 1997) (ordering withdrawing opinion).

4. *Papai v. Harbor Tug and Barge Co.,* 67 F.3d 203 (9th Cir.1995), *rev'd,* 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).

ston contended that he was entitled to have his benefits paid under the Longshore and Harbor Workers' Compensation Act.[5] This raised questions of whether the place where Mr. Hurston was hurt constituted a maritime situs, and whether he was working in a maritime status at the time.

The place of the injury looked like a pier, but it was not used to dock ships. Nor did it reach water, except at high tide. A pipe brought oil from a well in the Santa Barbara channel to the pier. Machinery on the pier separated out the water and gas, and stored the oil in big tanks along with oil from other wells. Once every five or ten days the oil from the tanks was pumped out into a pipe that deposited it into an offshore barge, which would take it to a refinery. The Benefits Review Board held that the structure was not a pier for purposes of coverage under the Act, but we reversed and remanded, holding that the structure was an "adjoining pier" under the Act.[6] Thus for purposes of the case at bar, it is established that Mr. Hurston's injury occurred at a maritime situs.

On remand, the Benefits Review Board held that Mr. Hurston was in maritime status. A significant part of the reasoning was that Mr. Hurston's "overall employment history" had been largely maritime. He had spent 90% of his time in the almost three decades preceding the accident as a marine diver, and only 10% as a pile driver. Different companies hired him out of a union hall that represented both trades. The Board read *Northeast Marine Terminal Co., Inc. v. Caputo*[7] to mean that a person who spent some of his time doing maritime work was covered by the Act even when he took a job that was not maritime. The Board also viewed construction work on a pier as maritime in nature, at least where spray from the ocean often made the pier slippery and the waves affected the way the pile driving was done. McGray Construction, the company that hired Mr. Hurston, petitions for review.

## ANALYSIS

■ In order to be covered by the Longshore and Harbor Workers' Compensation Act, a person must be an "employee" as defined in the Act.[8] The "status" test, whether a person is an "employee," is independent of the "situs" test, whether a person is at a maritime location. Both tests must be satisfied. So, for example, "persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered."[9] Thus even though it is now established that Mr. Hurston was working at a covered situs, we must evaluate his "status" independently.

■ The statute defines "employee" status as "maritime employment" including "longshoreman," and "any harbor-worker including a ship repairman, ship-builder, and ship-breaker," but excludes seamen and excludes various people who work on and near water if covered by workers' compensation:

> The term "employee" means any person engaged in maritime employment,

---

5. 33 U.S.C. §§ 901–950.

6. *Hurston v. Director*, 989 F.2d 1547 (9th Cir. 1993), construing 33 U.S.C. § 903(a). Section 903(a) of the Act, which defines the situs requirement, provides:

> compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine rail-

way, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903(a).

7. *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 271 (1977).

8. 33 U.S.C. § 903(a).

9. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 267, 97 S.Ct. 2348 (1977).

including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include—

> (A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;

> (B) individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet;

> (C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);

> (D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of any employer described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this Act;

> (E) acquaculture workers;

> (F) individuals employed to build, repair, or dismantle any recreational vessel under sixty-five feet in length;

> (G) a master or member of a crew of any vessel; or

> (H) any person engaged by a master to load or unload or repair any small vessel under eighteen tons net

if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.[10]

Thus, first, the work has to be "maritime" for the person to be an "employee." We discuss below what that means. Second, the statute coordinates the definition of "employee" for coverage under the Act so that no one is left out in the cold, by largely assuring coverage as a seaman, a longshore or harbor-worker, or under state workers' compensation laws. In this case as in most or all, the question is not whether an employee will be left out in the cold, but only which scheme covers him. Third, Congress gave its attention to a number of quite specific occupations, such as longshoremen, ship repairmen, aquaculture workers, builders of small recreational vessels, and so forth, so the statute cannot be read as a broad brush approach.

Several Supreme Court decisions have construed aspects of the statute bearing on the case before us. In *Northeast Marine Terminal Co. v. Caputo*,[11] a man who checked cargo as it was unloaded, and a terminal laborer hurt as he loaded cargo onto a truck, were held to be covered. The Court rejected the notion that coverage under the Act ended when the cargo reached its first point of rest on the dock, and held that the 1972 amendments expanded coverage shoreward from navigable waters to adjoining areas used for loading and unloading and building ships, but constrained coverage by requiring that a person's employment be "maritime."[12] Both men hurt fell into the category of "longshoremen or other person engaged in longshoring operations."[13] Containerization had changed unloading operations, so checking the cargo as it was unloaded on shore from a container already at rest on land was longshoring.[14] Because truck drivers picking up cargo at the dock are not covered,[15] the man loading the truck presented a closer case. But his assign-

---

**10.** 33 U.S.C. § 902(3).

**11.** *Northeast Marine Terminal Co., Inc. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

**12.** *Id.* at 263–64, 97 S.Ct. 2348.

**13.** *Id.* at 265 n. 26, 97 S.Ct. 2348 (referring to 33 U.S.C. 903(3)).

**14.** *Id.* at 270–71, 97 S.Ct. 2348.

**15.** *Id.* at 267, 97 S.Ct. 2348.

ments on his job with this employer as a terminal laborer included loading and unloading barges, lighters, and containers, as well as trucks.[16] Because he was "a member of a regular stevedoring gang," and as a terminal laborer was assigned various tasks during the day that might well include unloading a vessel or container, he was employed as a longshoreman whether the cargo had come to rest off the ship or not.[17] "The Act focuses primarily on occupations-longshoreman, harbor worker, ship repairman, ship builder, ship-breaker.... [W]hen Congress said it wanted to cover 'longshoremen,' it had in mind persons whose employment is such that they spend at least some of their time in indisputably longshoring operations and who, without the 1972 Amendments, would be covered for only part of their activity."[18]

*P.C. Pfeiffer Co. v. Ford*[19] held that "maritime employment" status does not depend on whether the tasks are performed over water, but instead requires maritime duties, such as longshoring. "Congress intended that a worker's eligibility for federal benefits would not depend on whether he was injured while walking down a gangway or while taking his first step onto the land."[20] The men injured in *P.C. Pfeiffer* were "doing tasks traditionally performed by longshoremen"[21] so they were covered. It did not matter that one of them was hired out of the warehousemen's union instead of the longshoremen's union, and was prohibited by union-management agreements from going on board

a ship.[22] "We do not suggest that the scope of maritime employment depends upon the vagaries of union jurisdiction."[23] *Director v. Perini North River Associates*[24] held that a man who unloaded caissons from a barge was a maritime employee.

*Herb's Welding, Inc. v. Gray*[25] established, importantly for this case, that the required "maritime employment" status did not "cover all those who breathe salt air."[26] The Court held that a welder who worked on an oil drilling platform was not covered, even though he faced maritime hazards, was generally on or near the water, arrived at his platform by boat, and unloaded his gear from the boat to the platform.[27] The 1972 amendments "were not meant 'to cover employees who are not engaged in loading, unloading, repairing, or building a vessel....'"[28] The term "maritime employment" does not "eliminate any requirement of a connection with the loading or construction of ships."[29]

■ The statute, as construed by these decisions, compels the conclusion that Mr. Hurston's particular engagement by McGray was not for "maritime employment," so he did not meet the "status test" for coverage under the Act. His "situs" on the pier where he "breathed salt air" did not exclude coverage, but the nature of his work did. His engagement was for piledriving, which was pier construction, not ship construction. It did not differ materi-

---

**16.** *Id.* at 255, 97 S.Ct. 2348.

**17.** *Id.* at 273–75, 97 S.Ct. 2348

**18.** *Id.* at 273, 97 S.Ct. 2348.

**19.** *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

**20.** *Id.* at 75, 100 S.Ct. 328.

**21.** *Id.* at 82, 100 S.Ct. 328.

**22.** *Id.* at 69, 100 S.Ct. 328.

**23.** *Id.* at 82, 100 S.Ct. 328.

**24.** *Director v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983).

**25.** *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).

**26.** *Id.* at 423, 105 S.Ct. 1421.

**27.** *Id.* at 425, 105 S.Ct. 1421.

**28.** *Id.* at 424, 105 S.Ct. 1421 (quoting H.R.Rep. No. 92–1441, p. 11 (1972); S.Rep. No. 92–1125, p. 13 (1972)).

**29.** *Id.* at 423–24, 105 S.Ct. 1421.

ally from the employment in *Herb's Welding,* platform construction. In no way was it longshoreman's or shipbuilder's work or anything like those categories.

■ The Director argues that Mr. Hurston was covered as a "harbor-worker" under the Act. The statutory phrase is "any harbor-worker including a ship repairman, ship-builder, and ship-breaker."[30] Mr. Hurston was neither ship repairman, nor ship-builder, nor ship-breaker. Nor was he a longshoreman. The statement in *Herb's Welding* that the 1972 amendments "were not meant 'to cover employees who are not engaged in loading, unloading, repairing, or building a vessel'"[31] prevents the expansive reading of the word "harbor-worker" as advocated by the Director. The Director argues that Mr. Hurston was a "harbor-worker" under a previous Board decision that defined the term to include "persons directly involved in the construction, repair, alteration or maintenance of harbor facilities (which include docks, piers, wharves, and adjacent areas used in the loading, unloading, repair or construction of ships)."[32] The Board's cases involving construction workers on piers have held that the work was not maritime where the piers were not used to accommodate ships.[33] The argument has no force in this case, because the Board's own case qualified "piers" with the phrase "used in the loading, unloading, repair or construction of ships," and the pier in this case was not so used. Mr. Hurston was not working on a pier used to accommodate ships, or on any sort of shelter or facility for ships, nor does the record establish that he was working in a harbor, which is a place for ships.[34] The Board also argues that Mr. Hurston should be deemed a harbor worker because he was exposed to the sea, but that argument is meritless in the face of the holding in *Herb's Welding* that even though the worker there "was generally on or near the water and faced maritime hazards," that was "relevant to 'situs,' not 'status.'" The situs and status tests are independent,[35] so our holding that the pier is a covered situs does not establish that the work Mr. Hurston was doing there was maritime in nature for purposes of the status test. *P.C. Pfeiffer* construes "maritime employment" "to embody an occupation rather than a geographic concept," referring to workers "solely in terms of what they are doing and never in terms of where they are working."[36] Maritime employment is "'an occupation test that focuses on loading and unloading.'"[37]

The Director also argues that the Board correctly deemed Mr. Hurston a "maritime employee," even if this job was entirely non-maritime, "by virtue of his overall employment history" and because "he is hired by companies out of a union hiring hall representing both trades."[38] The theory is that because *Caputo* and our own decision in *Schwabenland*[39] establish that the Act covers people where "at least some" of

30. 33 U.S.C. § 902(3).

31. *Herb's Welding,* 470 U.S. at 424.

32. *Stewart v. Brown & Root, Inc.,* 7 BRBS 356, 365 (1978).

33. *Rhodes v. Healy Tibbits Constr. Co.,* 9 BRBS 605, 609 (1979); *Laspragata v. Warren George, Inc.,* 21 BRBS 132, 135 (1988).

34. WEBSTER'S NEW COLLEGIATE DICTIONARY 522 (G. & C. Merriam Co.1977) (defining "harbor" as "a part of a body of water protected and deep enough to furnish anchorage; *esp:* one with port facilities").

35. *P.C. Pfeiffer,* 444 U.S. at 72–74, 100 S.Ct. 328.

36. *Id.* at 79–80, 100 S.Ct. 328.

37. *Herb's Welding,* 470 U.S. at 424, 105 S.Ct. 1421 (quoting *P.C. Pfeiffer,* 444 U.S. at 80, 100 S.Ct. 328).

38. Board decision at 5.

39. *Schwabenland v. Sanger Boats,* 683 F.2d 309 (9th Cir.1982).

their time is spent on maritime work, Mr. Hurston's history of spending 90% of his career in the maritime employment of deep-sea diving, together with his being hired out of a hall that served maritime workers and employers of maritime workers, makes him a maritime employee even when hired for a non-maritime job.

In our prior opinion now withdrawn,[40] we had accepted the Director's and Mr. Hurston's argument on this point. We granted rehearing and withdrew that opinion, however, because the Supreme Court reversed the case on which we relied.[41]

The case we previously relied on, *Papai v. Harbor Tug and Barge Co.*,[42] had held that a person could be a "seaman" for purposes of Jones Act coverage, even though he was hired only for a one day maintenance job that would not take him to sea on the vessel or establish any "connection to the vessel in navigation,"[43] if he was hired out of a union hall from which seamen were hired, and he had been a seaman for other employers on other jobs and possibly for this employer on some other jobs. The idea was that employers hiring out of the union hall could be treated as a common employer. But the Supreme Court reversed our decision[44] in *Papai* and rejected the "common employer" theory.

In *Harbor Tug and Barge Co. v. Papai*,[45] the Court held that although seaman status could be based on a connection with a fleet rather than a single vessel, common ownership or control of vessels established who should be treated as the employer, not hiring out of the same union hall. "Considering prior employments with independent employers in making the seaman status inquiry would undermine 'the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act (and, perhaps more importantly for purposes of the employers' workers' compensation obligations, who will be covered by the LHWCA) before particular work day begins.' "[46]

■ Although *Harbor Tug* is a Jones Act case regarding seaman status, the rejection of the common employer theory based on hiring out of the same union hall renders untenable use of the same theory to determine maritime employment status under the Longshore and Harbor Workers' Compensation Act. Under *Papai*, working out of a union hall from which employers regularly hire seamen, and past engagements as a seaman out of that hall for other employers, do not make a person a seaman, if the job he is hired for would not itself make him a seaman. By analogy, working out of a union hall from which employers regularly hire maritime workers, and a history of maritime employment, do not make one a maritime employee, when an employer hires the individual for a non-maritime job. The statutory term "person engaged in maritime employment" means "engaged" on this job. That a person has been engaged in maritime employment in other jobs, and that he is hired out of a union hall that includes maritime workers, does not bring him within the

**40.** *McGray Constr. Co. v. Director*, 112 F.3d 1025 (9th Cir.1997), *withdrawn*, 124 F.3d 1310 (9th Cir.1997).

**41.** *See McGray Constr. Co. v. Director*, 124 F.3d 1310 (9th Cir.1997) (order withdrawing opinion).

**42.** *Papai v. Harbor Tug and Barge Co.*, 67 F.3d 203 (9th Cir.1995).

**43.** *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995).

**44.** *Papai v. Harbor Tug and Barge Co.*, 67 F.3d 203 (9th Cir.1995).

**45.** *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997).

**46.** *Id.* at 1541 (quoting *Chandris*, 115 S.Ct. at 2187).

Act, if his current employment is non-maritime.

Our decision in *Schwabenland v. Sanger Boats*,[47] cited by the Director and Mr. Hurston, does not support their position. There we held that a man employed for work which was largely nonmaritime but partly maritime, injured in a maritime activity, was engaged in maritime work for purposes of the Act. We rejected the proposition that a "substantial portion" of the employee's time must be maritime, in favor of "some portion."[48] The case is not analogous because the employee in *Schwabenland* was hired for maritime and nonmaritime work by the same employer on the same job. Mr. Hurston was hired for maritime work by various employers on other jobs, but was hired exclusively for non-maritime work on this job.

The Director argues that we should grant *Chevron*[49] deference to his positions, that working out of a hall that places maritime workers and a past history of maritime employment make one a maritime employee even on a wholly nonmaritime job, and that doing construction work on a pier is maritime harbor-worker employment. The deference would in any case be limited, because the Director's view is only a litigation position, and has not been adopted as a regulation, nor have Benefits Review Board opinions within the agency adopted it. We cannot properly defer in this case, because the statute is not ambiguous and "easily susceptible to the Director's interpretation."[50]

■ The Act says "the term 'employee' means any person engaged in maritime employment."[51] The word "engaged" is in the present tense, implying that it means engaged at the time of this employment, not merely engaged in the past during other employments. The word "engaged" means, in the employment context, "to obtain or contract for the services of; employ."[52] So in the statutory context, the phrase "engaged in maritime employment" means that an employer hired the individual to perform maritime work in this particular contract of employment. The case at bar does not raise a question of one engaged to perform both maritime and nonmaritime work, as in *Schwabenland*. The concern with "walking in and out of coverage"[53] is not a metaphor suggesting that once a person is a maritime worker for long enough, he remains one, even on a non-maritime job for a non-maritime employer. It is a literal reference to the pre-Act problem of longshoremen stepping between different coverages as they descended the gangplank. "Congress intended that a worker's eligibility for federal benefits would not depend on whether he was injured while walking down a gangway or while taking his first step onto the land."[54] Mr. Hurston was engaged by this employer on this job to do construction on a pier not used to serve ships; he was not engaged by this employer to do any maritime work on this job.

To call a lifelong maritime worker a maritime employee, even when he is hired to perform a nonmaritime job, would conflict with the way we ordinarily use words, so it is unlikely to be how Congress used them. Suppose a man who has been a lawyer takes a higher paying job during the Alaska pipeline project as a welder.

**47.** *Schwabenland v. Sanger Boats,* 683 F.2d 309 (9th Cir.1982).

**48.** *Id.* at 312.

**49.** *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**50.** *Force v. Director,* 938 F.2d 981, 983 (9th Cir.1991).

**51.** 33 U.S.C. § 902.

**52.** AMERICAN HERITAGE DICTIONARY 454 (2d Coll. ed.1985).

**53.** *Hurston v. Director,* 989 F.2d 1547, 1551 (9th Cir.1993).

**54.** *P.C. Pfeiffer,* 444 U.S. at 75, 100 S.Ct. 328.

He will say "I *am* a lawyer," but "I am now *engaged* as a welder." In his welding job, he will not be assigned any work writing memoranda of law or arguing in court. "[T]he crucial factor is the nature of the activity to which a worker may be assigned."[55] The hypothetical welder would no more be *engaged* as a lawyer, despite *being* a lawyer, than a lifelong maritime worker would be engaged as such when hired for a nonmaritime job.

The Director's position would also promote such striking unfairness to workers that the construction is unlikely to be what Congress intended. Suppose a load falls on two construction workers hired to do exactly the same non-maritime job together, and one of them has in other employments done maritime work. Were we to accept the Director's argument, the worker with the maritime history would get benefits under the federal Longshore and Harbor Workers' Compensation Act, his coworker under the state workers' compensation act. It is a plain injustice for two men to be treated differently when exactly the same mishap injures both of them simultaneously in the same job, because one of them has a history of a different kind of employment. Congress did not in the Act create an aristocracy of labor, so that long-time maritime workers would be compensated more amply than others, even when hired for non-maritime employment, keeping their superior status while between maritime jobs.

There was nothing fortuitous or unfair about Hurston being covered by workers compensation rather than the Act. He knew when he took the job that he would be doing construction, not maritime work. He was between diving jobs. Hurston was not hired to do his usual maritime work, diving, and he knew from the moment of his hire that on this job he was not being engaged as a diver. There was no danger of his diving in and out of coverage, because he was not going to do any diving at all.

Giving Hurston coverage under the Act because he was hired out of the maritime union hall would have the unfortunate practical effect of discouraging employers from hiring out of his union hall for non-maritime work, and encouraging employment discrimination against former maritime workers. It would also create a trap for the unwary employer who does not explore the work history of someone he hires. "Considering prior employments with independent employers in making the seaman status inquiry would undermine 'the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act (and, perhaps more importantly for purposes of the employers' workers' compensation obligations, who will be covered by the LHWCA) before particular work day begins.' "[56]

## CONCLUSION

Though Hurston was at a maritime situs, he was not employed in a maritime status. Accordingly the petition for review is GRANTED, and the Benefits Review Board's decision is REVERSED.

---

**55.** *Id.* at 82, 100 S.Ct. 328.

**56.** *Papai,* 117 S.Ct. at 1541 (quoting *Chandris,* 115 S.Ct. at 2187).