Dorelda GILLILAND, Petitioner,

v.

E.J. BARTELLS CO., INC.; Wausau Insurance Co.; Director, Office of Workers' Compensation Programs, Respondents.

No. 00–70585.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2001

Filed Oct. 16, 2001

Meagan A. Flynn, Preston, Bunnell & Stone, LLP, Portland, Oregon, for the petitioner.

Dennis R. VavRosky, VavRosky, MacColl, Olson & Pfeifer, P.C., Portland, Oregon; Samuel J. Oshinsky and Andrew D. Auerbauch, United States Department of Labor, Washingon, D.C., for the respondents.

Before: THOMPSON, TASHIMA and GRABER, Circuit Judges.

GRABER, Circuit Judge:

This appeal requires us to decide how to compute the offset to which an employer owing benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) is entitled under 33 U.S.C. § 933(f) when a claimant receives a third-party tort recovery that includes ongoing, periodic payments funded by an annuity contract. The Director of the Office of Workers' Compensation Programs (Director) allowed the employer to offset the amount of each periodic payment against benefits owed at the time the payment was made. Because that method of computing the offset reasonably interprets 33 U.S.C. § 933(f), we defer to the Director and, accordingly, affirm the decision of the Benefits Review Board.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 1982, Claimant Dorelda Gilliland filed a claim for death benefits under the LHWCA on behalf of herself and her two dependent children. Claimant's husband, Darol Gilliland, had died on December 22, 1981, of work-related asbestosis. Mr. Gilliland had been employed as an asbestos worker by Defendant E.J. Bartells Co., Inc. (Employer). Claimant was awarded funeral expenses, death benefits, and her husband's total disability benefits for the period from October 15 through December 22, 1981. "Death benefits" under the LHWCA are ongoing in nature, continuing "during widowhood." 33 U.S.C. § 909(b).

Claimant also prosecuted a wrongful death action against several third-party defendants (manufacturers and suppliers of asbestos). In February 1985, Claimant entered into a "Release and Settlement Agreement" with some of the third-party defendants. As part of the settlement, the third-party defendants agreed to pay to Claimant "$750 per month beginning February 21, 1985 and ending January 21, 2005. Monthly payments to increase by 3% each year with the increase to occur on the February 21 payment." By the terms of the agreement, the third-party defendants were permitted, but not required, to purchase one or more annuity contracts in order to fund their settlement obligation. The third-party defendants opted to purchase an annuity.

On July 2, 1996, Employer filed a notice of controversion, asserting that it had overpaid compensation to Claimant in view of the amounts that Claimant had recovered from the third-party defendants. The parties disagreed about how to compute the credit to which Employer was entitled under 33 U.S.C. § 933(f), and they sought a formal hearing before an administrative law judge (ALJ). Claimant argued that Employer was entitled to a one-time credit for the purchase price, or the present value, of the annuity that the third-party defendants purchased to fund their obligation to make the monthly payments. By contrast, Employer contended that it was entitled to a dollar-for-dollar credit against death benefits payable by it under the LHWCA for each monthly payment made pursuant to the third-party settlement, and it was entitled to such credit at the time Claimant received each payment.

The ALJ determined that the phrase "net income" in § 933(f) means the income "actually received" and that the terms of

§ 933(f) did not require that the value of the annuity be discounted to present value. Consequently, he agreed with Employer that Employer was entitled to a credit for the actual amount of each monthly payment received by Claimant.[1]

Claimant appealed to the Benefits Review Board. The Director filed a brief in the proceeding at the request of the Board. The Director urged the Board to affirm the ALJ's decision in all respects. It did. Claimant then timely filed a petition for review with this court pursuant to 33 U.S.C. § 921(c).

## STANDARD OF REVIEW

We review the Board's decision for "errors of law" and for compliance with the substantial evidence standard. *Taylor v. Director, OWCP,* 201 F.3d 1234, 1238 (9th Cir.2000). The Board's interpretation of the LHWCA is a question of law that we review de novo. *Force v. Director, OWCP,* 938 F.2d 981, 983 (9th Cir.1991). Although we grant no "special deference" to *the Board's* construction of the LHWCA, we "must ... respect the Board's interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute." *McDonald v. Director, OWCP,* 897 F.2d 1510, 1512 (9th Cir.1990).

By contrast, we afford "considerable weight" to the construction of the LHWCA urged by *the Director. Mallott & Peterson v. Director, OWCP,* 98 F.3d 1170, 1172 (9th Cir.1996).

If the Director's interpretation is reasonable, the court should defer to it. Put another way, if the provision to be interpreted is easily susceptible to the Director's interpretation, the reviewing

1. The ALJ also held that Employer was not entitled to a credit for the amounts received by Claimant's children under the settlement agreement. The Benefits Review Board affirmed that decision, and Employer has not appealed.

court need go no further. This deference extends not only to regulations articulating the Director's interpretation, but also to litigating positions asserted by the Director in the course of administrative adjudications, since administrative adjudications are agency action, not *post hoc* rationalizations for it.

*Id.* (citation and internal quotation. marks omitted) (citing *Martin v. Occupational Safety & Health Rev. Comm'n,* 499 U.S. 144, 158, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)).

We recognize that we sometimes have stated that our deference is limited when the Director adopts an interpretation of a statute as a "litigating position." *Port of Portland v. Director, OWCP,* 192 F.3d 933, 939 (9th Cir.1999), *cert. denied,* 529 U.S. 1086, 120 S.Ct. 1718, 146 L.Ed.2d 640 (2000); *McGray Constr. Co. v. Director, OWCP,* 181 F.3d 1008, 1015 (9th Cir.1999). However, the opinion in *McGray* was referring to a litigation position that the Director advanced solely in post hoc judicial proceedings, as distinct from the underlying administrative proceedings. *McGray,* 181 F.3d at 1015 ("The deference would in any case be limited, because the Director's view is only a litigation position, and has not been adopted as a regulation, nor have Benefits Review Board opinions within the agency adopted it."). *Port of Portland* relied exclusively on *McGray* in support of its statement that a "litigating position" is not entitled to deference; nothing in the opinion indicates an expansion of *McGray. Port of Portland,* 192 F.3d at 939. We therefore conclude that the Director's interpretation of the LHWCA is entitled to deference *if it is* contained either in a regulation or in the Director's litigation position within an *agency* adjudication, so long as the interpretation is reasonable.

Here, the Director has advanced his interpretation of § 933(f) in the course of administrative adjudications—not only in this case, but also at least one other, earlier case. *Cretan v. Bethlehem Steel Corp.,* 24 B.R.B.S. 35, 1990 WL 284097 (1990), *rev'd in part on other grounds,* 1 F.3d 843 (9th Cir.1993). Moreover, the Board already has adopted the Director's interpretation. *Cretan,* 1990 WL 284097, at *2 & *5 (holding that, when a claimant receives an annuity as part of a third-party tort recovery, the employer/carrier is entitled to a credit for each annuity payment at the time the claimant receives it). Consequently, we must defer to. the Director's interpretation of the statute, if that construction is reasonable.

## DISCUSSION

 Title 33 U.S.C. § 933(f) governs the computation of benefits owed to a claimant when the claimant receives a third-party tort recovery on account of injuries compensable under the Act. That section provides:

> If the person entitled to compensation institutes proceedings within the period prescribed in subsection (b) of this section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorneys' fees).

The parties dispute what constitutes "the net amount recovered against such third person" in this case. Claimant argues that the "net amount recovered" against the third-party defendants with respect to the series of $750 monthly payments is the present value, as of 1985, of

the annuity that was purchased to fund the payments. Employer and the Director contend, by contrast, that the "net amount recovered" consists of the actual amount of each payment as it is made.[2]

We defer to the Director's interpretation of 33 U.S.C. § 933(f)—that an employer or carrier is entitled to a credit for the amount of each annuity payment actually *received by the claimant* under the terms of a settlement at the time each such payment is received—because it is a reasonable interpretation of the statute. Indeed, § 933(f) is not susceptible to Claimant's interpretation.

Claimant's interpretation of § 933(f) as requiring a lump-sum credit to the employer for the purchase price of an annuity stretches the meanings of the words "actual" and "recovered." An amount paid to an annuity company is not an amount "recovered" by a claimant, because it is not received by the claimant. Neither is it an "actual" amount recovered. "Actual" means "existing and not merely potential or possible." The American Heritage Dictionary of the English Language 18 (4th ed.2000). Claimant's interpretation of the statute would result in an offset by a *potential* amount *to be* recovered later, contrary to the statutory directive.

Additionally, the statutory text invites the question, "recovered by whom?," and makes clear that the answer is "recovered by the *claimant.*" The first sentence of 33 U.S.C. § 933(f) provides that "the person entitled to compensation"—the claimant—shall obtain the difference between his or her overall entitlement and "the net amount recovered against" a third party. The second sentence simply ensures that the claimant can subtract his or her reasonable expenses incurred in obtaining the third-party recovery. In other words, sub-

section (f) of the statute takes the perspective of the recipient and is designed to ensure that the claimant obtains exactly 100 percent of the proper amount of benefits—no more, and no less.

The context provided by 33 U.S.C. § 933(e) further weighs in favor of the Director's interpretation. Unlike subsection (f), which is written to describe the claimant's entitlement, subsection (e) is written from the perspective of the employer or carrier. It provides that, when an employer or carrier litigates a tort claim on behalf of a person entitled to compensation under the LHWCA, the employer or carrier is permitted to retain from the amount recovered "the present value of all amounts thereafter payable as compensation." 33 U.S.C. § 933(e)(1)(D). Thus, when Congress intended an amount to be reduced to present value for the purpose of a computation under the LHWCA, it specifically required that reduction. Its failure to mandate a present-value computation in § 933(f) suggests that it did not intend an award of a stream of payments to be discounted to present value. *Cf. Texports Stevedores Co. v. Director, OWCP,* 931 F.2d 331, 332–33 (5th Cir.1991) (holding that an employer is not entitled to "extend the time the tort recovery will act as a substitute for compensation payments" by discounting to present value the amount of accrued compensation owed to a claimant, and contrasting § 933(e) with § 933(f) to reach that result).

The policy behind the statute also supports the Director's interpretation. Looking at the statute as a whole, it is designed to ensure that each claimant is paid *exactly* the amount of benefits to which that claimant is entitled under the LHWCA. Subsection (f) fits into that overall plan by

---

**2.** Although § 933(f) provides that the claimant's reasonable litigation expenses must be deducted from the amount recovered before

the employer can take advantage of an offset, that type of deduction is not at issue in this case.

preventing claimants from receiving a windfall if they receive a tort recovery for the same injury; that part of the law makes employers responsible only for the difference between a third-party recovery actually received by a claimant and the amount of entitlement.

Claimant's interpretation would thwart congressional intent by creating the opportunity for a windfall or a shortfall. If Claimant prevailed in the circumstances of this case, she would receive more than 100 percent of her entitlement, a bonus or a windfall. On the other hand, in a different circumstance, a claimant could be harmed by Claimant's reading. For example, if a third-party defendant bought an annuity and the employer subtracted the purchase price, but the annuity company became insolvent or refused to pay the claimant for some other reason, the claimant would experience a shortfall. That result, too, would thwart congressional intent.

Claimant makes two arguments in support of her interpretation. First, she contends that an employer or carrier may offset only "the net amount *recovered against such third person*," with "such third person" defined as "some person other than the employer or a person or persons in his employ" who is "liable in damages." 33 U.S.C. § 933(a) & (f) (emphasis added). Claimant argues that, in this case, the only amount recovered against a relevant third party is the purchase price of the annuity and that any amount in excess of the purchase price is "recovered against" a different entity—the annuity company. Thus, she concludes, because the statute provides only that the employer or carrier may offset amounts recovered from liable third parties, but not amounts recovered from annuity companies, Employer may not offset any amount beyond the purchase price of the annuity. For the reasons discussed above, that is an implausible interpretation of the statute.

Second, Claimant argues that the statute requires an employer to take the offset to which it is entitled under § 933(f) at a single time. She asserts that the requirement is met if the employer receives a one-time credit for the purchase price of the annuity at the time of settlement. The terms of the statute dispose of Claimant's argument. Nowhere does it discuss explicitly the timing of the § 933(f) offset, and it contains no directive requiring the employer to offset the total value of a tort recovery at one time. To the contrary, the statute's requirement that the employer offset only the "actual" amounts received by a claimant suggests that the employer must wait until the claimant is paid before taking the § 933(f) credit.

## CONCLUSION

The Director's interpretation of § 933(f) is reasonable. We therefore defer to it and hold that, when a claimant receives a tort recovery from a third-party defendant for which an employer or carrier is entitled to an offset under 33 U.S.C. § 933(f), and the award includes periodic payments, the employer may take a dollar-for-dollar credit for each payment at the time the claimant receives it, whether or not the employer elects to fund those periodic payments by purchasing an annuity. The petition for review is

DENIED.