**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE PEDROZA,

                  *Petitioner,*

v.

BRB; DIRECTOR, OFFICE OF
WORKERS COMPENSATION
PROGRAMS; NATIONAL STEEL &
SHIPBUILDING COMPANY,

                *Respondents.*

No. 05-75449

BRB No. 05-0419

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
October 23, 2008—Pasadena, California

Filed October 1, 2009
Amended October 20, 2010

Before: Harry Pregerson and N. Randy Smith, Circuit
Judges, and Raner C. Collins, District Judge.*

Opinion by Judge Collins;
Special Concurrence by Judge Pregerson

---

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

## COUNSEL

Joshua T. Gillelan II, Longshore Claimant's National Law Center, Washington, D.C. (argued), and Erica A. Dupree, for the petitioner.

Roy D. Alexrod, Law Offices of Roy Alexrod, Solana Beach, California, (argued) for the respondent.

# ORDER

The opinion filed on October 1, 2009, and reported at 583 F.3d 1139 is hereby amended. An amended opinion and special concurrence are filed concurrently with this order.

The panel has unanimously voted to deny appellee's petition for rehearing en banc. Judge Pregerson and Judge Smith have voted to deny the petition, and Judge Collins has so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is denied. No further petitions for rehearing or rehearing en banc will be entertained.

IT IS SO ORDERED.

---

# OPINION

COLLINS, District Judge:

Jose Pedroza ("Pedroza"), an employee of National Steel and Shipbuilding Company ("National Steel"), petitions this court to review the determination of the Benefits Review Board ("BRB or Board") that claimant Pedroza is not entitled to benefits under the Longshore and Harbor Worker's Compensation Act ("Longshore Act or LHWCA"), 33 U.S.C. § 901 *et seq.,* because his psychological injuries were caused by National Steel's legitimate, adverse personnel decisions. We have jurisdiction to review a final order of the BRB. 33 U.S.C. § 921(c).

Both parties agree that substantial evidence supports the findings of the Administrative Law Judge ("ALJ") and the BRB that Pedroza's psychological injuries were a result of legitimate personnel actions. Therefore, only one question is before us on appeal: Are psychological injuries that result from legitimate personnel actions compensable under the Longshore Act? We answer this question in the negative, therefore affirming the BRB in this decision and in *Marino v. Navy Exchange Service*, 20 BRBS 166 (Ben. Rev. Bd. 1988), and *Sewell v. Noncommissioned Officers Open Mess*, 32 BRBS 134 (Ben. Rev. Bd. 1998).

## FACTS

Pedroza was involved in an accident, as a load handler at the Naval Base in San Diego, California, loading and unloading materials from the USS Boxer on August 24, 1999. While Pedroza was unloading the USS Boxer, he struck a 440 volt cable line. This caused an explosion. After the accident, Pedroza did not seek medical attention. Though he now claims that he suffered anxiety after the accident, Pedroza never told his co-workers or supervisors about it.

A year after the accident, National Steel's Transportation Department Manager, Brian Mathiasan, wrote a letter to Pedroza about the accident. The letter informed Pedroza that the August 24, 1999 accident was caused by his negligence. After reading the letter, Pedroza sought medical attention at National Steel's dispensary and Kaiser Permanente.

Pedroza wrote a letter to refute Mathiasan's assessment. In his letter, Pedroza apologized for the accident and waged a complaint against National Steel for their disregard of his health and well being after twenty-five years of service. Pedroza also asserted he was unfairly treated by National Steel for their failure to write a similar letter to the rigger who accompanied him during the accident.

On January 24, 2000, Pedroza had a meeting with his supervisors to discuss job safety. At this meeting, Pedroza informed his Union Safety Supervisor that his immediate supervisor's actions adversely affected his ability to perform his job. During the meeting, Mathiasan informed Pedroza about ways in which he could improve his work performance. Mathiasan also issued a verbal warning to Pedroza, that, if he was unable to improve his performance, he would be demoted.

After the meeting, Pedroza's performance improved for a short period of time. On July 14, 2000, Mathiasan met with Pedroza to discuss his job performance. At this meeting, Mathiasan gave Pedroza four memos from his supervisors regarding his poor work ethic. After the meeting, Pedroza went on leave from work for three months.

While on leave, Pedroza sought medical attention for his psychological problems. When Pedroza returned to work, he was demoted because of his poor work performance and failure to fill out the proper safety forms after the 1999 accident. National Steel felt that someone with Pedroza's lengthy service record was better served by being demoted than by being fired.

A month later, Pedroza's doctor placed him on medical leave for five months. While on medical leave, Pedroza filed a workers' compensation claim for psychological injuries caused by his stressful working conditions.

During the ALJ hearing, Pedroza provided medical evidence to demonstrate that his disability was caused by his workplace. Dr. Bayardo, an occupational psychiatrist, found that Pedroza's psychiatric condition and disability was predominately related to his workplace. Dr. Bayardo diagnosed Pedroza with chronic, mild post traumatic stress disorder as a result of the 1999 accident. National Steel refuted Dr. Bayardo's findings by providing three psychiatrists' evalua-

tions of Pedroza.[1] Each of the psychiatrists reported Pedroza's depression was a result of National Steel's disciplinary action and reprimands.

The ALJ denied Pedroza's workers' compensation claim, because the medical evidence provided by both parties supports National Steel's contention that Pedroza's disability was a result of the July 2000 disciplinary action and not the August 1999 accident. The ALJ relied on *Marino* to deny Pedroza's claim. 20 BRBS 166 (1988) (holding that an employee's psychological reaction to legitimate, good faith personnel actions by the employer is not compensable because it does not constitute a working condition that Congress intended to compensate under the Longshore Act).

On appeal, Pedroza contended that (1) the ALJ erred in failing to address whether the claimant's condition was caused by prolonged and cumulative stress at the workplace and (2) the ALJ erred in finding that Pedroza's depression and anxiety were a result of the reprimands and demotion. The Board agreed with Pedroza and held the ALJ erred by failing to take into account the general working conditions that could have led to Pedroza's psychological injuries. The BRB relied on *Marino* and *Sewell. See Sewell*, 32 BRBS 127 (holding that a claimant must demonstrate that his psychological disability was caused by stressful working conditions irrespective of

---

[1]Dr. Steven Ornish found that Pedroza's depression was a result of the disciplinary action and the reprimands. Dr. Ornish found that Pedroza suffered from major depression with anxiety in partial remission. Dr. Ornish concluded that Pedroza did not experience terror or horror sufficient to trigger Post Traumatic Stress Disorder given he finished his shift after the accident, and never mentioned any emotional or physical problems until a year later. Dr. Ornish evaluated Pedroza twice and concluded that Pedroza did not make a claim that he suffered Post Traumatic Stress Disorder until after he visited his attorney. Another psychiatrist, Dr. Alvarez found that Pedroza's post traumatic stress disorder and depression was a result of the personnel actions. Dr. Schleimer also found "it was more than likely than not that [Pedroza's] subjective symptomatolgy developed following the reprimand or personnel issues."

disciplinary and termination proceeding against the claimant to successfully claim benefits under the Longshore Act). As a result of applying *Marino* and *Sewell*, the BRB ordered the ALJ to determine whether the claimant's daily work environment, such as daily interactions with his supervisor, triggered his psychological injuries.[2]

National Steel filed a motion for reconsideration *en banc*. Hearing this case *en banc,* the Board denied the motion for reconsideration. The Board directed the ALJ to determine if Pedroza's injuries were caused by the employer's personnel actions or general working conditions.

On remand, Pedroza presented a prima facie case that his injuries were due in part to "general working conditions." However, the ALJ denied his claim, because National Steel was able to rebut Pedroza's claim by providing substantial, comprehensive, and negative evidence that Pedroza's psychological injuries were due solely to legitimate personnel actions and not compensable.

On appeal, Pedroza contended that (1) the BRB lacked the authority to create policy, such as the *Marino* doctrine and (2) the Board's action established a class of exemptions that frustrated congressional intent to hold employers strictly liable for injuries to their employees. The Board rejected Pedroza's arguments. The BRB held legitimate personnel actions, such as the reduction in force in *Marino*, do not constitute general

---

[2]To determine if claimant's injury is covered under the Act, the claimant must establish a prima facie case. To establish a prima facie case, the claimant must demonstrate he sustained a harm or pain and that the conditions existed or an accident occurred at his place of employment which could have caused the harm or pain. *Duhagon v. Metro. Stevedore Co.*, 169 F.3d 615 (9th Cir. 1999); *see also* 33 U.S.C. §§ 902(2), 920(a). An employer can rebut the claimant's presumption by providing substantial, negative and comprehensive evidence that the injuries or disabilities were not caused or exacerbated by general working conditions. *Swinton v. Kelly*, 554 F.2d 1075, 1082 ( D.C. Cir. 1976).

working conditions. The Board articulated that § 921(b) of the Longshore Act gives the Board and courts the authority to decide questions of law or fact raised in appeals. Implicit in the statutory authorization is the ability to determine what type of events constitute working conditions.

## STANDARD OF REVIEW

We review a Benefits Review Board's decision for errors of law and adherence to the substantial evidence standard. *Taylor v. Dir., OWCP*, 201 F.3d 1234, 1238 (9th Cir. 2000).

We review the Benefits Review Board's interpretation of the Longshore Act *de novo*, because it is a question of law. *General Construction Co. v. Castro*, 401 F.3d 963, 965 (9th Cir. 2005). The BRB is not a policymaking body and its construction of the Longshore Act is not entitled to special deference. *Peru v. Sharpshooter Spectrum Venture, LLC* , 493 F.3d 1058, 106 (9th Cir. 2007) ( *quoting M. Cutter Co. v. Carroll*, 458 F.3d 991, 993 (9th Cir. 2006) (internal quotation marks omitted). "When construing the [Longshore Act], we begin with its plain language. We also consider whether a particular interpretation is supported by the Act's history, and the policies animating the Act." *Peru v. Sharpshooter Spectrum Venture, LLC.*, 493, F.3d 1058, 1063 (9th Cir. 2007)(internal citations omitted).

## DISCUSSION

We here determine whether psychological injuries caused by legitimate personnel decisions are compensable under the Longshore Act. We begin our analysis with the plain meaning and legislative history of the relevant portions of the Longshore Act.

## I.  Plain Meaning and Legislative History

### 1.

**[1]** The Longshore Act was enacted to create a federal workers' compensation statute for longshoremen and harbor workers, after the Supreme Court held that state workers' compensation statutes constitutionally could not apply to injured maritime workers. *See generally Noguiera v. New York, N.H. & H.R. Co.*, 281 U.S. 128 (1930). To be entitled to benefits under the Act, a claimant must have sustained an injury within the meaning of the Act. 33 U.S.C. § 903(a) (providing that "[c]ompensation shall be payable under this Act in respect of disability . . . of an employee, but only if the disability . . . results from an injury."). Section 2(2) of the Act provides that:

> The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment. 33 U.S.C. § 902(2).

**[2]**  Injuries are presumed to be work related under § 920(a) after the claimant establishes a prima facie case that the injury not only was caused by the employment, but that it also arose during employment. *See U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., OWCP*, 455 U.S. 608, 615 (1982) (stating that "[n]ot only must the injury have been caused by the employment, it also must have arisen during the employment.").

**[3]** It is well settled that a psychological impairment, which is work related, is presumed to be compensable under the Act. *See, e.g., Dir., OWCP v. Potomac Elec. Power Co.*, 607 F.2d 1378 (D.C. Cir. 1979). Therefore, to receive the ben-

efit of this § 920(a) presumption, the claimant must prove not only that he has a psychological impairment, but that an accident occurred, or working conditions existed, which could have caused the impairment. *See id.*

On appeal, Pedroza concedes that substantial evidence supports both the ALJ's and the Board's findings that his psychological injuries were not caused by general working conditions, but were instead caused (if at all) by legitimate personnel actions. We, therefore, need only address whether psychological injuries resulting from a legitimate personnel act are compensable under the Act.

We have previously held, in the unpublished opinion of *Turner v. Todd Pacific Shipyards Corp.*, 990 F.2d 1261, No. 91-70524 (9th Cir. April 8, 1993) (table), that injuries resulting from legitimate personnel actions do not fall within the purview of the act. However, an unpublished decision is not precedent for our panel. The BRB has also previously found that psychological injuries, that arise from legitimate personnel actions, are not compensable. *See Sewell*, 32 BRBS 127; *Marino*, 20 BRBS 166. Again, however, these decisions are not binding on this panel.

### 2.

We hold that psychological injuries arising from legitimate personnel decisions are not compensable under the Act. We reach this result by analyzing the plain language of the Act in light of the policy underlying the statute.

**[4]** The Longshore Act provides that "[c]ompensation shall be payable under this Act in respect to disability . . . of an employee, but only if the disability . . . results from an injury." 33 U.S.C. § 903(a). In order to fall within the act the injury must be work-related. *See* 33 U.S.C. § 902(2). Injuries resulting from legitimate personnel decisions are not caused by working conditions and they are not work related.

The basic policy of the Longshore Act was to provide the benefits of workers' compensation to persons engaged in maritime employment. *See generally Nogueira*, 281 U.S. 128. The Act was designed to provide compensation for maritime workers who were injured while working on navigable waters in the course of their employment. It was also designed to strike a balance between the concerns of longshoremen and harbor workers, and their employers. *Morrison-Knudsen Const. Co. v. Dir., OWCP*, 461 U.S. 624, 636 (1983).

**[5]** The psychological injury resulting from a legitimate personnel action is not the type of injury that was intended to be compensable under the Longshore Act. An interpretation contrary to this would create a trap for the "unwary" employer and undermine the interest of employers and employees alike. *See McCray Constr. Co. v. Dir., OWCP*, 181 F.3d 1008, 1016 (9th Cir. 1999) (rejecting an interpretation of the Longshore Act that would create a trap for the unwary employer). It would also encourage employers to terminate employees for poor work performance, rather than first take legitimate personnel actions to correct the employee problem. Accordingly, we hold that legitimate personnel decisions cannot result in compensable injury under the Act.

## II. *Marino-Sewell* Doctrine

The BRB's previous decisions on this matter are consistent with our holding. We therefore approve the BRB's *Marino-Sewell* line of cases.

**[6]** In *Marino*, the BRB reversed the ALJ's decision to grant a claimant benefits under the Longshore Act for his work-related psychological injuries, because the claimant's injuries were caused by a layoff. 20 BRBS 166 (1988). The BRB determined layoffs or a reduction in force do not constitute "working conditions" that would give rise to a compensable injury under the Longshore Act. *Id.* The Board reversed the ALJ's determination that a layoff constituted "working

conditions." On appeal, the Board directed the ALJ to consider if the claimant's injuries were caused by working conditions such as "cumulative stress on the job due to supervising a number of locations, insufficient personnel to perform the job, working more than the required hours, and performing the duties of his subordinates, in addition to the notification that he was being laid off." *Id.* The Board believed granting compensation to employees for psychological injuries as a result of a layoff, would unfairly hinder employers from making legitimate personnel decisions. The Board believed that, if the layoff was improper, the claimant had other remedies outside of workers' compensation. *Id.*

**[7]** Nine years later, the BRB addressed this issue again in *Sewell*, when a claimant filed a claim alleging her stress related psychiatric problems were caused by her poor working conditions. *Sewell*, 32 BRBS 127. The claimant was employed as a civilian bartender, and her supervisor had a very aggressive management style. *Id.* The ALJ denied her claim pursuant to *Marino*. *Id.* On appeal, the Board vacated the ALJ's findings and directed the ALJ to consider whether the claimant could demonstrate that her psychological injuries were caused by her general working conditions, irrespective of the disciplinary and termination proceedings. On remand, the ALJ found that the claimant could not demonstrate that her injuries were caused by her general working conditions. On the second appeal, the Board reversed the ALJ's findings because uncontroverted medical evidence showed the claimant's psychological injuries were caused by her stressful working conditions, irrespective of the disciplinary and termination proceeding. *Id.*

**[8]** As a result of *Marino* and *Sewell*, the BRB constructed a doctrine that allows psychological injuries to be compensable, if the claimant can demonstrate that psychological injuries are caused by general working conditions and not legitimate personnel decisions. This doctrine properly interprets the Act in light of its underlying policy.

## III. Pedroza's Arguments

Pedroza first argues that the *Marino-Sewell* doctrine is an unreasonable interpretation of § 902(2), because the Board's interpretation differs from the majority of states' workers' compensation statutes with similar language. Pedroza contends that, since state workers' compensation allows for compensation for mental or psychological disabilities without inquiry into whether the employer engaged in a legitimate personnel decision, the Longshore Act should follow the similar trajectory. Pedroza also notes that several state legislatures have developed special barriers similar to *Marino-Sewell*, to govern mental or psychological disabilities or injuries.[3] Therefore, absent congressional action to take similar steps, the Longshore Act provides compensation for psychological disabilities or injuries without inquiry into legitimate personnel decisions. We disagree.

---

[3]In California, the legislature enacted Cal. Labor Code § 3208.3(h) in 1993 to "establish a new and higher threshold of compensability for psychiatric injury." *See also* Cal. Labor Code § 3208.3 (c) ("No compensation . . . shall be paid by an employer for a psychiatric injury if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action.").

In New York, the legislature in 1990 enacted a similar provision to redefine injury. It reads "an injury which is solely mental and is based on work-related stress if such mental injury is a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion or termination taken in good faith by the employer." *See Gamble v. New York State Narcotics Control Comm'n*, 400 N.Y.S.2d 599 (N.Y. App. Div. 1977).

In Oregon, the legislature in 1998 added a provision that barred compensation for mental disorders unless it is a product of "conditions other than generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation by the employer or cessation in employment." Pet. Br. 29. This is codification of the *Marino-Sewell* doctrine. Prior to this legislation, Oregon law recognized compensability of psychological injuries as a result of legitimate personnel decisions. *See Korter v. EBI Companies,* 610 P.2d 312 (Or. Ct. App. 1980).

Pedroza's argument ignores the history of the Longshore Act. Since its inception in 1927 and subsequent amendment in 1972, the Longshore Act was designed to create a uniform policy to provide workers' compensation for longshoremen and harbor workers. *Northeast Marine Terminal Co. Inc. v. Caputo*, 432 U.S. 249, 256-59 (1977). The legislative history of the 1972 amendments to the Longshore Act demonstrates that Congress viewed most state workers' compensation laws as inadequate protection for longshoremen and harbor workers. *Id.* at 263. Moreover, congressional inaction is not a reliable guide to determine legislative intent. *United States v. Craft,* 535 U.S. 274, 287 (2002).

Pedroza next contends that the *Marino-Sewell* doctrine violates Longshore Act policy of no fault liability. Section 904(b) states "compensation shall be irrespective of fault as a cause for injury." Thus, as Pedroza argues, the *Marino-Sewell* inquiry to whether a personnel action was legitimate or illegitimate is a question of fault. Thus, as Pedroza argues, *Marino-Sewell* is inconsistent with workers' compensation laws. We disagree.

It is true, that the basic premise of the workers' compensation system is that an employer is protected, from full tort liability for employment related injuries even when it is at fault, in exchange for bearing limited liability for compensation and medical benefits as a cost of the business. However, the *Marino-Sewell* doctrine does not disrupt this system. The *Marino-Sewell* doctrine merely refines the type of employment-related activities that could give rise to a workers' compensation claim. Furthermore, the distinction that the *Marino-Sewell* doctrine creates between "legitimate" or "illegitimate" personnel actions is not about fault, it is about whether the employer's actions created an environment of poor working conditions to trigger psychological injuries.

**[9]** The *Marino-Sewell* modification strikes a balance between the employer and the employee. The *Marino* prong

allows the employer to take personnel actions without fear of a workers' compensation claim due to a psychological injury from their actions. Meanwhile, the *Sewell* prong puts a limit on the type of legitimate personnel actions in which the employer may engage without fear of workers' compensation claims, because some personnel actions can facilitate poor working conditions that could trigger compensable work related psychological injuries such as "harassment by her supervisor," "verbal accusations," and "physical harm." Both of these cases create a balance between employee and employer. *Marino* supports the employer's concerns while the *Sewell* prong protects the employees. This is an important balance between the needs of employers and employees. *See Morrison-Knudsen Constr. Co.,* 461 U.S. at 635 (explaining that the Longshore Act was designed to strike a balance between the concerns of employers and employees).

## CONCLUSION

**[10]** We hold that psychological injuries arising from legitimate personnel actions are not compensable under the Longshore Act. Therefore, the BRB's development of the *Marino-Sewell* doctrine is a correct interpretation of the Longshore Act and a reflection of its underlying policy.

**PETITION DENIED.**

---

PREGERSON, Circuit Judge, concurring specially:

I write separately to emphasize that our holding concerns legitimate personnel actions, and not employer conduct that is in any way hostile, vindictive, malicious, mean, insensitive, crude, or abusive.