

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2003

# Maher Terminals Inc v. Director OWCP

Precedential or Non-Precedential: Precedential

Docket 01-3343

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Maher Terminals Inc v. Director OWCP" (2003). *2003 Decisions.* Paper 498.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/498

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 29, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3343

MAHER TERMINALS, INC.,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS; VINCENT RIGGIO

Respondents

On Petition for Review Pursuant to 33 U.S.C. § 921(c) of
the Decision and Order of the United States Department
of Labor, Benefits Review Board, Entered June 28, 2001
(BRB Nos. 96-1136 and 00-960)

Argued February 24, 2003

Before: BECKER, *Chief Judge*,\* SCIRICA, *Circuit Judge*\*\*
and SHADUR,\*\*\**District Judge.*

(Filed: May 29, 2003)

---

\* Judge Becker completed his term as Chief Judge on May 4, 2003.

\*\* Judge Scirica succeeded to the position of Chief Judge on May 4, 2003.

\*\*\* Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

WILLIAM M. BRODERICK, ESQUIRE
 (ARGUED)
RICHARD P. STANTON, JR.,
 ESQUIRE
7 Dey Street, Suite 700
New York, NY 10007

*Counsel for Petitioner*

JIM C. GORDON, JR., ESQUIRE
JOSHUA T. GILLELAN, II, ESQUIRE
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

*Counsel for Respondent Director,
Office of Workers' Compensation
Programs*

PHILIP J. ROONEY, ESQUIRE
 (ARGUED)
Israel, Adler, Ronca & Gucciardo
160 Broadway
New York, NY 10038

*Counsel for Respondent
Vincent Riggio*

## OPINION OF THE COURT

BECKER, *Circuit Judge.*

The sole question in this petition for review of the order of the United States Department of Labor, Benefits Review Board (the "Board") is whether the claimant, Vincent Riggio, is a covered maritime employee under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* (the "Act"). Riggio was employed by petitioner Maher Terminals, Inc. ("Maher") as both checker, a covered position, and delivery clerk, a job that is not covered by the Act.[1] Although Maher stipulated at oral argument that

---

1. Delivery clerks are not covered by the Act because they perform clerical work in an office; in contrast, checkers are covered because they are involved in the loading and unloading process, traditional longshoring work that generally involves activities on the docks.

Riggio split his time evenly between these jobs, the company argues that Riggio is not covered by the Act because on the day of his injury he was working as a delivery clerk and was not subject to reassignment. In response, Riggio asks us to follow the reasoning of the Board and find him covered because although he was not working in a covered position on the day of his injury, he regularly engaged in covered maritime employment. Thus, Riggio submits, his job at Maher required him to spend "at least some of [his] time in indisputably longshoring operations," the test for coverage articulated by the Supreme Court in *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 273 (1977).

We agree with Riggio's interpretation of the Act and will not adopt Maher's narrow interpretation of the Act's coverage analysis that would include only the day on which the claimant was injured. Instead, we believe that we must look at the claimant's regular duties to determine whether he is engaged on a regular basis in maritime employment. We will therefore deny Maher's petition for review.

## I.

The facts are not disputed. On February 3, 1994, Riggio injured his left arm when he fell off a chair while working in the office of Berth 62 of Maher's port facilities in Elizabeth, New Jersey. Although he was employed as a delivery clerk on the day of his injury, Riggio split his time evenly between work as a checker and as a delivery clerk for Maher.[2] He was a member of the local checker's union

---

2. The parties originally disagreed as to what percentage of his time Riggio worked as a checker or a delivery clerk. In the first hearing before the administrative law judge, Riggio testified that he split his time evenly between these positions. Maher disputed this assertion by presenting evidence that Riggio had worked solely as a delivery clerk in the two weeks before the injury. Maher conceded on remand before the administrative law judge that Riggio worked occasionally as a checker and was subject to assignment to this position. However, at oral argument before this court, Maher stipulated to the fact that Riggio worked 50 % of his time as a checker and the other 50 % as a delivery clerk.

and remained on Maher's permanent hire list, but not on a specified job list, so that the dock boss could assign him to a different job each day. When Riggio worked as a checker, he was required to be in the shipping lanes, but when employed as a delivery clerk, Riggio worked exclusively in the office entering data into a computer. In both jobs, his function was to handle paperwork for the in-coming and out-going cargo.

This case has a lengthy administrative history. Because the facts are not in dispute the sole issue in the administrative proceedings was the legal question whether Riggio's claim is covered under the Longshore & Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* The first administrative law judge ("ALJ") to hear the case, Judge Ainsworth Brown, denied coverage because he found that Riggio's job as a delivery clerk was excluded from coverage because it was a clerical position under 33 U.S.C. § 902(3)(A) (stating that "individuals employed exclusively to perform office clerical, secretarial, security, or data processing work" shall not be considered maritime employees covered by the Act). Judge Brown determined that even though Riggio also worked as a checker, this was insufficient to satisfy his burden of proving coverage under this court's decision in *Maher Terminals, Inc. v. Farrell*, 548 F.2d 476 (3d Cir. 1977) (holding that a delivery clerk is not covered under the Act).

On appeal, the Benefits Review Board vacated Judge Brown's denial of benefits. It noted that because Riggio also worked as a checker, he could not have been "exclusively" employed as a delivery clerk within the meaning of 33 U.S.C. § 902(3)(A). The Board remanded the case to the Office of Administrative Law Judges for further proceedings. Before the case was heard again, Maher petitioned this court for review of the Board's order, but we dismissed the petition for lack of jurisdiction. The parties also agreed on a stipulation resolving the medical and compensation issues subject to the final resolution of the coverage issue.

On remand, the case was assigned to a different ALJ, Judge Ralph A. Romano, whom the parties informed about their stipulation, although they did not ask him to enter the stipulation into the record at that time. Judge Romano held

that a delivery clerk could be covered by the Act only if he were subject to reassignment as a checker during the course of a single workday. Since Riggio worked only as a delivery clerk on the day of his injury and did not demonstrate that he was subject to reassignment during that day, Judge Romano denied him coverage. Riggio appealed again to the Board, which rejected Judge Romano's "same day of injury" status test. Instead, the Board found Riggio to be covered because "he was assigned to work as a checker by [Maher] as a part of his regular duties," even though he did not work as a checker on the day of his injury or even in the two weeks previous. Accordingly, the Board reversed Judge Romano's order and remanded the case "for consideration of any remaining issues."

Within the mandated 60 day period to appeal, *see* 33 U.S.C. § 921(c), Maher filed a petition in this court for review of the Board's decision. Riggio subsequently filed a motion to hold briefing in abeyance pending the finalization of the stipulation referred to above regarding the amount recoverable upon resolution of the coverage issue. The final version of the stipulation read in relevant part:

> There is dispute [*sic*] between claimant and employer as to the existence of jurisdiction under the Longshore and Harbor Workers' Compensation Act. The employer does not concede the existence of such jurisdiction by reason of the execution of this stipulation. The parties agree, in the event of a finding of jurisdiction under the Act, that the injury has caused a permanent loss of use to the left upper extremity and that the claimant is entitle [*sic*] to an award of 4% of the left arm, equaling 12.48 weeks, at a weekly rate of $738.30 pursuant to 33 U.S.C. 908(c)(1).

> . . .

> Additionally, in the event that the third Circuit [*sic*] finds jurisdiction under the [Act], and an award of 4% of the left arm is awarded, a fee of $7,500.00 should be paid to the firm of Israel, Adler, Ronca & Gucciardo up and above compensation paid to the claimant.

Judge Romano issued an order approving the stipulation, but he characterized the stipulation as a settlement. Recognizing that Judge Romano's order of settlement was not what the parties wanted, Maher petitioned Judge Romano to amend the order to reflect that the agreement is a stipulation and not a settlement. In a subsequent order, Judge Romano complied with this request.

We have appellate jurisdiction to review the Board's order under 33 U.S.C. § 921(c).[3] Our examination is "limited to a determination of whether the Board acted in conformance with applicable law and within its proper scope of review." *Curtis v. Schlumberger Offshore Services., Inc.*, 849 F.2d 805, 807 (3d Cir. 1988). Because the Board does not administer the Act, our review of its interpretation of the Act is "essentially plenary" but we "will 'respect' [the Board's] interpretation if it is 'reasonable.' " *Sea-Land Serv., Inc. v. Rock*, 953 F.2d 56, 59 (3d Cir. 1992) (quoting *Curtis*, 849 F.2d at 808).

## II. Coverage

### A. Description of the Coverage Test

The 1972 amendments to the Longshore and Harbor Workers Compensation Act created a "two-part test 'looking both to the "situs" of the injury and the "status" of the injured,' to determine eligibility for compensation." *Rock*, 953 F.2d at 60 (quoting *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 265 (1977)). Because Congress

---

3. The Director, Office of Workers' Compensation Programs, a respondent in this case, filed a motion to dismiss Maher's petition for review, claiming that this court lacks jurisdiction to hear this appeal because the Board's decision was not a "final order" within the meaning of 33 U.S.C. § 921(c). We will deny this motion because although the Board remanded the case to the ALJ for further consideration, there was nothing more for the ALJ to decide in light of the parties' stipulation resolving all issues except for the legal question of coverage. Because the Board's order was "for all purposes final by the time this court was called upon to consider the petition," we have jurisdiction under the Act. *Sea-Land Serv., Inc. v. Director, OWCP*, 540 F.2d 629, 631 n.1 (3d Cir. 1976).

included a broad geographical area in the "situs" component of the test, including both injuries on water and areas on land that are connected to maritime activity, it limited the persons who fulfill the "status" test to those who "engaged in maritime employment." 33 U.S.C. § 902(3). The Act defines such persons as:

> any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include —

> (A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;

*Id.* We noted in *Rock* that this definition of "maritime employment" is rather imprecise, but that Congress "came closest to defining this key term in the 'typical example' of the expanded coverage set forth in the legislative history." 953 F.2d at 60. The legislative history explains:

> The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered for part of their activity. To take a typical example, cargo, whether in break bulk or containerized form, is typically unloaded from the ship and immediately transported to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters. The employees who perform this work would be covered under the bill for injuries sustained by them over the navigable waters or on the adjoining land area. . . . [E]mployees whose responsibility is only to pick up stored cargo for further transshipment would not be covered, nor would purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo. However, checkers, for example, who are directly involved in the loading or unloading functions are covered by the new amendment.

H.R. Rep. No. 92-1441, 92d Cong., 2d Sess. 10-11 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4708.

In its decision in *Caputo, supra*, the Supreme Court read the "typical example" in the legislative history quoted above

as indicating Congress's intent "to cover those workers involved in the essential elements of unloading a vessel—taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area." 432 U.S. at 267. In contrast, "the example also makes it clear that persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered." *Caputo*, 432 U.S. at 267; *see also Chesapeake and O.R. Co. v. Schwalb*, 493 U.S. 40, 46 (1989) (stating that the coverage test for "land-based work other than longshoring and the other occupations named in § 902(3) is an occupational test focusing on loading and unloading").

Importantly, the *Caputo* Court specifically rejected the "moment of injury" principle, in which the coverage analysis depended on the task that the employee was engaged in at the time of the injury. Rather, the Court held that "when Congress said it wanted to cover 'longshoremen,' it had in mind persons whose employment is such that they spend at least some of their time in indisputably longshoring operations and who, without the 1972 amendments, would be covered for only part of their activity." 432 U.S. at 273. The Court emphasized this point again in *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 81 (1979), when it stated that "[a] worker responsible for some portion of that (longshoring) activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process." In *Rock, supra*, we explained the Court's interpretation of the Act as seeking "to avoid 'shifting coverage' . . . by extending coverage to an employee who throughout the day might have been assigned to unload a vessel but at the hour of the accident had been temporarily assigned a task that might not have been covered under the Act." 953 F.2d at 63.

Although the Supreme Court's decisions indicate a rather liberal analysis of the extent of coverage, we held in *Rock* that there is a limit to those covered by the Act. In that case, the claimant had been employed for several years as a longshoreman, but eventually decided to work solely as a courtesy van driver, a choice he was entitled to by virtue of his seniority. The claimant worked solely in this function

for two years before the date of his injury, which occurred during the course of his job as a driver. We determined that this type of employment was not covered under the Supreme Court's interpretation of the Act because a courtesy van driver is not "an essential element or ingredient of the loading or unloading process." 953 F.2d at 67. Although we noted that the claimant was officially subject to reassignment as a longshoreman, we declined to grant him coverage for that reason alone because we did not think that the "shifting coverage" aspect of *Caputo* applied. We explained:

> The [*Caputo*] holding cannot be stretched to cover Rock, who voluntarily chose a position that would no longer involve him in the dangers of loading and unloading, and whose only occupation in the two years in which he held his new job was to drive the courtesy van. [*Caputo*] protects those employees who walk in and out of coverage on a frequent basis, not those who are nominally subject to reassignment.

*Id.* at 67 n.17.

## B. Application of the Coverage Test

The parties agree that the only dispute over Riggio's coverage regards his status as a maritime worker — not the situs of the injury. Riggio makes two arguments in favor of coverage. First, he asserts that his job as a delivery clerk, which he was performing on the day of the injury, was a covered form of employment. Second, he contends that because he worked on occasion for Maher as a checker, and was subject by Maher to assignment on any day as a checker, this too confers coverage. We do not find Riggio's first argument persuasive. Riggio admits in his brief that he "does not contend that his office activities, considered in isolation, confer [statutory coverage]." The law is clear that delivery clerks, performing the function that Riggio was on the day of his injury, are not covered under the Act. *Maher Terminals, Inc. v. Farrell*, 548 F.2d 476 (3d Cir. 1977); *see also Sette v. Maher Terminals, Inc.*, 27 BRBS 223 (1993) (denying coverage for a delivery clerk).

In his second argument, Riggio urges us to look beyond the day of the injury in order to determine whether he was "engaged in maritime employment." In other words, Riggio submits that because he worked half of his time as a checker, a job that is covered under the Act, *see Rock*, 953 F.2d at 64, and was subject to assignment as a checker, it would be improper to look merely at the moment of his injury to characterize whether he was engaged in maritime employment. Maher disagrees with this analysis and argues that our decision in *Farrell, supra,* is "on all fours" with the case at bar. The employee in *Farrell*, like Riggio on the day of his injury:

> worked in an office. He did not work on the pier, in the yard, or on the dock as a checker . . . . That on occasion he left the office to examine markings on cargo, and that in the past he had worked as a checker is not controlling. What is controlling is the nature of his primary duties. As we perceive the congressional intent, that is the sole test. Farrell's primary duties being that of a clerk and not a checker, he is excluded from coverage.

548 F.2d at 478. Despite these similarities, Riggio contends, and the Board agreed, that the analysis in *Farrell* is no longer valid in light of *Caputo* and other subsequently decided Supreme Court cases. Riggio argues persuasively that *Caputo*'s holding that covered employees must "spend at least some of their time in indisputably longshoring operations," 432 U.S. at 273, creates a broader scope of coverage than *Farrell*'s "primary duties" test.

For further support, Riggio notes that in our decision in *Rock*, we cited with approval the Court of Appeals for the First Circuit's opinion in *Levins v. Benefits Review Board*, 724 F.2d 4 (1st Cir. 1984). *Levins* concerned whether an employee who was called a "book clerk" was covered under the Act. Rather than look only at the title of the employee, the First Circuit examined "the *actual* nature of [the employee's] regularly assigned duties as a whole." *Id.* at 7 (quotation omitted) (emphasis in original). The First Circuit also rejected the use of the "primary duties" test from our opinion in *Farrell* because the Supreme Court stated in *Caputo* that workers who spend "at least some of their time

in indisputably longshoring operations" are covered. *Id.* at 8 (quoting *Caputo*, 432 U.S. at 273). The First Circuit examined the totality of the claimant's job, and noted that serving as a runner, a covered job, constituted not "discretionary or extraordinary occurrences, but rather a regular portion of the *overall* tasks to which petitioner could have been assigned as a matter of course." *Id.* at 9.

Other Courts of Appeals have followed the same approach as the First Circuit and looked at the totality of the employee's duties to determine whether he was engaged as a maritime employee. For example, in *Boudloche v. Howard Trucking Co.*, 632 F.2d 1346 (5th Cir. 1980), the Court of Appeals for the Fifth Circuit concluded that an employee who worked between 2.5 to 5 percent of his time in traditional longshoring operations was covered. *Id.* at 1348. The Fifth Circuit specifically rejected a "substantial portion" test — akin to our "primary duties" test in *Farrell* — because the Supreme Court's decisions in *Caputo* and *Ford* explained that only *"some"* of an employee's time must be in longshoring operations in order to be covered. *Id.* The Fifth Circuit was careful to note, however, that its "decision does not undertake to define the point at which a worker's employment in maritime activity becomes so momentary or episodic it will not suffice to confer status." *Id.*

Interestingly, Maher responds that the same aspect of *Caputo* upon which these Courts and Riggio rely supports its argument as well. Maher quotes our interpretation of *Caputo* in *Rock* in which we explained that the Supreme Court extended "coverage to an employee who throughout the day might have been assigned to unload a vessel but at the hour of the accident had been temporarily assigned a task that might not have been covered under the Act." 953 F.2d at 63. Maher seizes on our use of the phrase, "throughout the day," to suggest that we adopted a narrow conception of protection from shifting coverage solely to, in Maher's words, "employees who walk in and out of coverage throughout the work day."

This is a misreading of *Rock*. As explained above, we declined to find coverage in that case because the claimant had worked for two years exclusively in a non-covered position and was only "nominally subject to reassignment"

to a covered job. 953 F.2d at 67 n.17. We also stated that *Caputo* "protects those employees who walk in and out of coverage on a frequent basis" and that *Caputo* followed the clear intent of the statute, "which was in part to avoid the shifting coverage caused by an employee's constant movement during the workday between land and sea." *Id.* In *Rock*, the claimant could not show that there was any real possibility of him working in a covered job.

Riggio's employment history is very different from that of the claimant in *Rock*; it more closely resembles those of the claimants in *Levins* and *Boudloche*. Because Maher stipulated at oral argument that Riggio spent half of his time employed as a checker, the mere fact that he was not employed in a covered position on the day of his injury, or even in the two weeks previous, does not call into question the conclusion that Riggio's regular duties involve spending "at least some of his time in indisputably longshoring operations." *Caputo*, 432 U.S. at 273. Further, Riggio was actually subject to reassignment as a checker, unlike the claimant in *Rock*, and the evidence does not support the conclusion that Riggio's engagement in maritime employment was "so momentary or episodic" as to be insufficient to confer coverage. *Boudloche*, 632 F.2d at 1348.

In a final attempt to deny Riggio coverage, Maher argues that we should not look at the employee's overall employment history when conducting the coverage analysis and cites to the Court of Appeals for the Ninth Circuit's decision in *McGray Construction Co. v. Director, OWCP*, 181 F.3d 1008 (9th Cir. 1999) for support. The facts in *McGray*, however, are easily distinguished from the case at bar. The claimant in *McGray* had been engaged in maritime employment in the past but had been subsequently hired by a different employer for a non-maritime job. The Ninth Circuit concluded that the claimant was not covered by the Act because it is impractical for an employer to know the prior work history of its employees and it would be unfair to treat employees working for an employer exclusively on a non-maritime job differently depending on this history. *Id.* at 1016. These concerns are not present in the instant case because it covers only Riggio's work history while employed

by Maher, which should know that it routinely assigns Riggio to maritime employment.

We believe that the proper analysis requires us to look at the "regular portion of the overall tasks to which [the claimant] could have been assigned as a matter of course," *Levins*, 724 F.2d at 9, to determine whether he spends "at least some of [his] time in indisputably longshoring operations." *Caputo*, 432 U.S. at 273. Because Riggio spent half of his time as a checker and his overall duties included assignment as a checker, an indisputably longshoring job, he is covered under the Act even though he worked as a delivery clerk on the day of his injury.

The petition for review of the Board's decision will be denied.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*