PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4651
_____

CONSOLIDATION COAL COMPANY,

Petitioner

v.

BENEFITS REVIEW BOARD; DANIEL X. SMITH;
DIRECTOR OFFICE OF WORKERS COMPENSATION
PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondents

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
BENEFITS REVIEW BOARD FROM (Claim No. 08-0287)
Administrative Law Judge: Honorable Daniel L. Leland
_____

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2010
_____

1

Before: HARDIMAN, GREENAWAY, JR., and
NYGAARD, <u>Circuit Judges</u>

(Opinion Filed: December 22, 2010 )

Jean E. Novak, Esquire
Strassburger, McKenna, Gutnick & Gefsky
444 Liberty Avenue Suite 2200
Four Gateway Center
Pittsburgh, PA 15222-0000
        *Counsel for Petitioner*

Stephen P. Moschetta, Esquire
The Moschetta Law Firm
28 West Cherry Avenue
Washington, PA 15301-0000
        *Counsel for Respondent*

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Consolidation Coal Company ("Consolidation") appeals from the Benefits Review Board's (the "Board") decision affirming an Administrative Law Judge's (the "ALJ") decision and order that Consolidation must pay Daniel Smith ("Smith" or "Claimant") benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"), 33 U.S.C. §§ 901-950, for an injury he suffered while working for Consolidation. Consolidation argues that the Board erred in affirming the

2

ALJ because Smith did not satisfy the two-part test under the Act—the "status" of the injured individual and the "situs" of the injury. Maher Terminals, Inc. v. Dir., Office of Workers' Comp. Programs, 330 F.3d 162, 166 (3d Cir. 2003). For the reasons explained below, we find that the LHWCA covers Smith's injury. Smith satisfies the two-part test. We shall affirm the Board's decision.

## I.  BACKGROUND

Mr. Smith was a diesel mechanic for Consolidation at Robena Preparation Plant Facility ("Robena"), where he worked in a maintenance garage. Robena is located in Greensboro, Pennsylvania, adjacent to the Monongahela River. Consolidation prepares and processes coal at Robena. Also, it receives "raw" coal from barges, moves the coal by conveyor belts through the processing plant, loads the processed coal back onto barges, or stockpiles and ships the coal later. Clean coal is also occasionally stockpiled beside the river rather than loaded directly onto the barges. Coal is then dropped into a machine called a de-stock hopper and goes to the river tipple and into the barges.[1] Smith testified that, at Robena, he worked on any equipment that ran on fuel. Relying on documentary and testimonial evidence, the ALJ found that Smith did not work on vessels or components of vessels, and records showed that the "virtual entirety" of his work was as a mechanic performing repairs on Terex machines and other heavy equipment. (App. at 21.)

---

[1] According to Smith, "de-stocking" or "de-stockpiling" is a colloquial term referring to taking stockpiled coal and loading it onto barges. (Appellee's Br. 4 n.1.)

3

The Robena facility covers approximately seven hundred acres. The garage where Smith's injury occurred is approximately one hundred yards from the edge of the Monongahela River. The garage is adjacent to the stockpiled coal, and to four Quonset huts, where steel cables, used as barge running lines, are stored. The garage is also located approximately one hundred fifty feet from the de-stock hopper.

On June 22, 1998, Smith was injured while repairing a Terex machine that had become disabled while loading coal into the de-stock hopper belt, which was adjacent to the garage. He shoveled coal out of the Terex onto the de-stock belt and brought the Terex to the garage for repairs. While using a sixteen-pound sledgehammer to remove rusted hinge pins from the Terex, Smith injured his back.

As a result of the injury, Smith had back surgery and has not returned to work. He received benefits under Pennsylvania's workers' compensation law. On May 26, 2004, Smith filed a claim for benefits under § 908(a) of the Act. On March 10, 2006, the parties requested by Joint Motion that the issue of jurisdiction be bifurcated from all other issues in the case. (Id.) The ALJ granted that request on March 13, 2006, and held a formal hearing on the issue of jurisdiction on March 30, 2006, in Pittsburgh, Pennsylvania.

In his Decision and Order, the ALJ determined that Smith was eligible for compensation under the Act. Specifically, the ALJ held that Smith satisfied both the "status" and "situs" aspects of the jurisdictional test.

4

First, the ALJ decided that Smith was a maritime employee, and thus had "status" under 33 U.S.C. § 902(3), stating:

> [] I find that the evidence of record establishes that Claimant was responsible for servicing mobile equipment, including Terex machines, which were used to load coal from operations on land to barges. Claimant stated, and Darrell Smith [Smith's supervisor] confirmed, that Terexes were used, in part, to load coal into the de-stock hopper, from which coal goes into the river tipple and directly onto barges. The Supreme Court has held that a person engaged in some portion of loading is as much an integral part of the process of loading and unloading as a person who participates in the entire process. [P.C.] Pfeiffer [Co., Inc. v. Ford], 444 U.S. [69,] 83 [(1979)]. The Third Circuit concluded that activities are indeed maritime if they are an integral or essential part of the chain of events leading up to the loading, unloading, or building of any vessel. [Sea-Land Serv., Inc. v.] Rock, 953 F.2d [56,] 67 [(3d Cir. 1992)]. Further, it is reasonable to conclude that a cessation of barge loading of Robena would occur if a mechanic such as Claimant did not service heavy equipment at the facility used, in part, in the loading process. Thus, Claimant's work is an integral or essential part of the chain of events ensuring that the loading process proceeds as Employer's business requires.

5

(App. at 21.) The ALJ also determined that Smith was injured on a covered "situs" under the Act. The ALJ reasoned that the garage was essential to the unloading of coal from vessels, was located within and around essential elements that comprise the loading process, and provided a site for repairs on equipment active in the loading process. Additionally, the ALJ noted that the Terex machine broke down in the midst of loading coal onto the de-stock belt, and was squarely within Robena's loading or unloading area at the time. As a result of these findings, the ALJ decided that "[t]he geography and function of the garage [were] sufficiently related to navigable waters such that Claimant . . . established he was injured on a covered situs." (Id. at 26.)

Consolidation filed a Notice of Appeal with the Board on December 18, 2007, and submitted a brief in support of its appeal on February 19, 2008. On September 29, 2008, the Board issued a Decision and Order affirming the ALJ.

Before the Board, Consolidation first contended that Smith lacked status "because the Terex is not used primarily to load coal, and [Smith] repairs other equipment as well." (Id. at 8.) The Board found that these uncontested facts were not dispositive, because it read the Supreme Court's decision in Chesapeake and Ohio Ry. Co. v. Schwalb, 493 U.S. 40 (1989), to hold that a claimant's contribution to the loading process need not be constant. (Id. (citing Schwalb, 493 U.S. at 48).) Further, the Board held that the ALJ "rationally found that interruption of barge loading at the Robena facility would occur if a mechanic did not service the heavy equipment used in the loading process. Accordingly, the ALJ properly concluded that [Smith's] work repairing the Terex machine is integral to the loading process." (Id. at 9 (internal citations omitted).)

6

Additionally, the Board found that "substantial evidence supports [the ALJ's] finding that [Smith] spent 'at least some of his time' in indisputably maritime work as this repair work was a regular non-discretionary part of [Smith's] job." (Id. (quoting Maher, 330 F.3d at 164.))

The Board also affirmed the ALJ's decision that Smith's injury occurred on a covered situs; specifically, the ALJ ruled that the garage was a covered situs. In so ruling, the Board recognized that this Circuit has not addressed whether a mixed-use situs where an employer maintains and repairs equipment used in both its loading/unloading and its plant operations, such as the Robena garage where Smith was injured, is an "adjoining area" under § 3(c) of the Act. The Board relied on statutory construction and authority from the United States Courts of Appeal for the First, Fifth, and Ninth Circuits. The Board rejected Consolidation's contention that § 3(a) of the Act "mandates that the site of an injury must be specifically used for loading, unloading, repairing, dismantling, or building a vessel to constitute an adjoining area." (App. at 12.) Rather, the Board found that because the garage had both a functional and geographical nexus to the loading site on the river, it was a covered situs under the Act.

On November 28, 2008, Consolidation filed a timely petition for review in this Court seeking reversal of the Board's decision.

## II. JURISDICTION AND STANDARD OF REVIEW

We exercise jurisdiction over this matter, pursuant to 33 U.S.C. § 921(c), which "gives the courts of appeals jurisdiction to review final orders of the Benefits Review Board." Sea-Land Serv., Inc. v. Rock, 953 F.2d 56, 59 (3d

7

Cir. 1992). We review the Board's decision to determine "whether the Board acted in conformance with applicable law and within its proper scope of review." Id. (citation omitted). The Board is bound by the ALJ's factual findings if they are supported by substantial evidence. Kowalchick v. Dir., Office of Workers' Comp. Programs, 893 F.2d 615, 619 (3d Cir. 1990). In reviewing the Board's decision, we must therefore independently review the record and decide whether the ALJ's findings are supported by substantial evidence. Id. Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

"Because the Board does not administer the [LHWCA], our review of its interpretation of the Act is essentially plenary but we will respect the Board's interpretation if it is reasonable." Maher, 330 F.3d at 166 (internal citations and quotation marks omitted).

### III. ANALYSIS

Consolidation argues that the Board erred in affirming the ALJ's decision that Smith met both the situs and status tests under the Act.[2] Based on our review of the record, we

---

[2] In 1972, Congress amended the Act to extend coverage landward. We summarized the significance of this amendment in Sea-Land Serv., Inc. v. Rock, 953 F.2d 56 (3d Cir. 1992):

> Before [1972], [the Act] only covered injuries sustained on the actual "navigable waters of the United States (including any dry dock)." 44 Stat. 1426. Injuries occurring on land were

8

conclude that the Board acted in conformance with applicable law and the ALJ's decision was supported by substantial evidence. We find that Smith's injury placed him within the ambit of the Act's status and situs requirements.

A. Status

Consolidation argues that Smith does not meet the Act's status requirement. It contends that his work as a mechanic was not integral to the loading and unloading process, and that when he was injured, while repairing the Terex, he was neither engaged in the loading or unloading of

> covered by the often inadequate state compensation programs. The 1972 amendments, which extended the coverage landward, addressed the "continuing anomaly that the schedule of benefits to be applied in any case depended on whether the injury occurred on the land or water side of the gangplank." Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs, 540 F.2d 629, 633 (3d Cir. 1976).
>
> . . . .
>
> In place of the situs test, Congress substituted a two-part test "looking both to the 'situs' of the injury and the 'status' of the injured," to determine eligibility for compensation. Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 265, 97 S.Ct. 2348, 2357, 53 L. Ed. 2d 320 (1977).

Rock, 953 F.2d at 60 (internal citations omitted).

9

ships, nor was he performing duties integrally connected with the loading or unloading process at the river's edge.

With regard to status, § 902(3) of the Act states that a covered employee must be a "person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include-" certain enumerated categories of employees under § 902(3). Schwalb, 493 U.S. at 45.

Maritime employment within the meaning of § 902(3) "expressly includes the specified occupations but obviously is not limited to those callings." Id. at 45 (citing Herb's Welding, Inc. v. Gray, 470 U.S. 414, 423 n.9 (1985)). In Schwalb, the Supreme Court held that covered activities included those of employees who are injured "while maintaining or repairing equipment essential to the loading or unloading process . . . ." Id. at 47. There, the Court upheld coverage for three employees, two of whom were responsible for ordinary janitorial services in addition to cleaning spilled coal from loading equipment to prevent it from malfunctioning. It found that "[s]omeone who repairs or maintains a piece of loading equipment is just as vital to and an integral part of the loading process as the operator of the equipment." Id. Additionally, the Court held that "[i]t is irrelevant that an employee's contribution to the loading process is not continuous or that repair or maintenance is not always needed." Id. "The determinative consideration is that the ship loading process could not continue unless [the machinery] that [claimant] worked on was operating properly." Id. at 48.

10

We reject Consolidation's argument that Smith fails to meet the status requirement. First, the fact that Smith did not repair the Terex "at river's edge," a requirement that Consolidation apparently reads into the status test, is not dispositive. As the Supreme Court has indicated, the purpose of the test is "to cover those workers on the situs who are involved in the essential elements of loading and unloading[.]" Herb's Welding, 470 U.S. at 423. Additionally, pursuant to the test articulated by the Supreme Court in Schwalb, we have held that "[l]and-based activity occurring within the section 903 situs . . . should be deemed maritime only if it is an integral or essential part of the chain of events leading up to the loading, unloading, or building of a vessel." Rock, 953 F.2d at 67. Thus, although Smith's work was "land-based," because the ALJ found his work to be "integral" or "essential" to Robena's loading or unloading operations, he met the Act's status requirements. (App. at 21.)

We also reject Consolidation's argument that the ALJ had no basis for finding that Smith's work was so integral or essential as to be covered by the Act. In support of this argument Consolidation contends that Smith's regular job as a mechanic included repair and maintenance of processing equipment that was not integral to the loading or unloading of coal. However, as the Board held, covered employees include those whose contribution to the loading process, like Smith's, need not be continuous. See Schwalb, 493 U.S. at 41; see also Maher, 330 F.3d at 170 (looking to the regular portion of overall tasks to which claimant could be assigned and whether he spends at least some of his time in indisputably longshoring operations).

11

The ALJ found, based on testimony from Claimant and his supervisor, Darrell Smith, that Claimant was responsible for servicing mobile equipment including Terexes. He also found that the Terex is used, at least in part, to load stockpiled coal into the de-stock hopper, which transfers the coal to a conveyor belt, which then transfers the coal to a barge on the river. Consolidation does not challenge the ALJ's finding that the Terex was used at times to load processed coal ultimately deposited onto barges. The Board, relying on Schwalb, properly found the Terex's non-continuous function to move coal was not a disqualifying factor.

This aspect of Claimant's employment creates a sufficient nexus to the loading and unloading of cargo, unlike the work of the employee in Rock, who is the focus of Consolidation's argument. See id., 953 F.2d at 67 (insufficient nexus found where claimant, a courtesy van driver, may have occasionally transported longshoremen within employer's maritime facility, but job description did not include this responsibility). The testimonial evidence above supports the ALJ's conclusion that Claimant's responsibilities were integral to the loading or unloading of coal.

The ALJ further relied on Claimant and Darrell Smith's evidence in concluding that a cessation of barge loading at Robena would eventually occur if a mechanic like Claimant did not service heavy equipment used in the loading process. The Board affirmed the ALJ's decision, finding immediate cessation of loading was not disqualifying because it could eventually happen.[3] Because we find that the ALJ

---

[3] The First Circuit has also found that immediate cessation of the shipbuilding process is not dispositive. See, e.g.,

12

relied on substantial evidence in determining that Smith's repair work was essential to, and an integral part of, the chain of events ensuring the continuation of the loading or unloading process, we find this conclusion reasonable as well.

### B. Situs

Consolidation next argues that that Board's situs determination was incorrect. The situs requirement concerns the location where a claimant seeking coverage under the Act suffered his or her injury. Consolidation contends that Smith was not injured on a covered situs because the garage in which he was injured was not an adjoining area customarily used by Consolidation for the loading, unloading, repairing, dismantling, or building of vessels. Consolidation posits that the language of § 903(a) makes clear that a site qualifies as an adjoining area under the provision only if it is used for those enumerated purposes. Section 903(a) states:

> Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal,

Graziano v. Gen. Dynamics Corp., 663 F.2d 340, 343 (1st Cir. 1981) (finding that claimant's maintenance and repair of shipyard facilities was essential to the building and repairing of ships, and failure to repair routine maintenance "would have led eventually to a stoppage or curtailment of shipbuilding and repairs.").

13

> building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903(a). Because Smith was not actually on navigable water or on a pier, wharf, dry dock, terminal, building way, or marine railway at the time of his injury, the determinative question is whether the garage in which Smith's injury occurred is an "adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." Id.

The ALJ found that the garage was 100 yards from a navigable waterway and that it "was neither an area used by [Consolidation] for loading or unloading coal, nor was it used for repairing, dismantling, or building vessels." (App. at 25.) Rather, "it was used for the repair of equipment . . . essential to the loading and unloading of coal from vessels." (Id.) Therefore, we must determine whether the garage constitutes an "adjoining area" under § 903(a) and whether the garage, a site used for the repair of equipment essential to the loading and unloading of coal from vessels, is a covered situs under § 903(a).

### i. Adjoining Area

Although Consolidation's argument focuses on the ALJ's finding with respect to the "usage" part of the situs test, it also argues that the ALJ's conclusion leads to a definition of "adjoining area" far more expansive than that contemplated by the Act. Before 1972, the Act limited coverage to workers only for "injuries occurring on navigable waters." Schwalb, 493 U.S. at 46. The pre-1972 situs test

14

therefore drew "a sharp line between injuries sustained over water and those suffered on land." P.C. Pfeiffer Co., Inc. v. Ford, 444 U.S. 69, 72 (1979).

We have acknowledged the Supreme Court's repeated emphasis "that the broad language employed in the 1972 amendments indicates that an expansive view of the legislation is appropriate." Nelson v. Am. Dredging Co., 143 F.3d 789, 795 (3d Cir. 1998) (citing Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 268 (1977)). Construing the statute as required in Nelson, we gave the word "area" its plain meaning and determined that it does not denote a building or structure as such, but "an open space, indeed sometimes within a building or other structure." Id. at 797.[4]

In Dravo Corp. v. Maxin, 545 F.2d 374 (3d Cir. 1976), cert. denied, 433 U.S. 908 (1977), although we did not define "adjoining," we held that the structural shop where the claimant was injured satisfied the situs test where "[t]he great majority of the work performed in the shop [wa]s related to shipbuilding or ship repair." Id. at 381. We also held that the facility was an adjoining area, notwithstanding that it was located 2,000 feet from the navigable channel and separated from more of the facility by a city street. Id. at 380.

---

[4] We noted in Nelson that the beach, the situs at issue which was covered under the Act, was contiguous to navigable waters; however, we did not define "adjoining," as used in the statute. Id. at 798 (noting that the "broader context of the statute" indicated Congress' intent primarily to ensure that areas on or adjacent to navigable waters be covered).

Our sister circuits' rationale in defining "adjoining area" is also instructive.[5] The Fifth Circuit, in examining whether an injury which took place in a gear locker used for the storage and maintenance of gear used to perform the loading operations five blocks from any wharf, held that the broader meaning of "adjoin"—"to be close to," "to be near," or "neighboring"—"instill[s] in the term its broader meanings . . . in keeping with the spirit of the congressional purposes." Texports Stevedore Co. v. Winchester, 632 F.2d 504, 513-14 (5th Cir. 1980).

> So long as the site is close to or in the vicinity of navigable waters, or in a neighboring area, an employee's injury can come within the [Act]. To require absolute contiguity would be to reenact the hard lines that caused longshoremen to move continually in and out of coverage. It would frustrate the congressional objectives of providing uniform benefits and covering land-based maritime activity.

Id. at 514-15.

The Ninth Circuit, in an opinion by then-Circuit Judge Kennedy, also adopted a broad reading of "adjoining area," finding that "[i]n order to further Congress' goal of uniform coverage, the phrase 'adjoining area' should be read to

---

[5] On the other hand, the Fourth Circuit has held "that an area is 'adjoining' navigable waters only if it . . . is 'contiguous with' or otherwise 'touches' such waters." Sidwell v. Express Container Servs., Inc., 71 F.3d 1134, 1138 (4th Cir. 1995). We decline to adopt that approach.

describe a functional relationship that does not in all cases depend upon physical contiguity." Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 141 (9th Cir. 1978). That court enunciated a non-exclusive list of factors to consider in determining whether or not a site is an 'adjoining area' under § 903(a), including "the particular suitability of the site for the maritime uses referred to in the statute; whether adjoining properties are devoted primarily to uses in maritime commerce; the proximity of the site to the waterway; and whether the site is as close to the waterway as is feasible given all of the circumstances in the case." Id. The court found that a gear locker used for storing and repairing machinery and equipment used exclusively for loading and unloading vessels and located approximately 2,600 feet north of the edge of the water was a covered situs under the Act. Id.

The expansive view of the 1972 amendments militates strongly in favor of defining "adjoining area" broadly. Thus, an area adjoins the navigable waters of the United States if it is "close to" or "near" those waters. Winchester, 632 F.2d at 514. However, the nearness of two locations is contextual. In this context, we find that in light of the spirit of the amendments and the Act's legislative history, our own expansive definition of "area" as articulated in Nelson, and the decisions of our sister circuits in Herron and Winchester, the Robena garage, located approximately one hundred yards (or three hundred feet) from the Monongahela River is an adjoining area under § 903(a). We view the ALJ's finding that the garage is located within and around essential elements of the loading operation of the maritime component of the Robena, specifically next to the stockpiled coal and 150

17

feet from the de-stock hopper, is evidence consistent with this conclusion.

### ii. Customarily Used in an Enumerated Activity

In addition to being adjoining, the area must also "customarily [be] used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). Here, the ALJ found, and the Board affirmed, that the garage serviced aspects of the loading process, thereby "ensuring the smooth operation of the maritime component of the Robena facility." (App. at 11.) Under Nelson, it is enough, the Board determined, that the garage had some maritime purpose.

The site at issue in Nelson was a beach, which we found to be "customarily used by at least *one maritime employer* to unload its vessel." 143 F.3d at 797. That usage satisfied an enumerated ground because of the area's use in unloading vessels. Here, it is undisputed that the Robena garage was not "directly" or "immediately" used for loading, unloading, repairing, dismantling, or building a vessel. It was used, however, to house and repair equipment necessary for these purposes. Subsequently, the Board held that "[t]he garage has a functional nexus with the loading process on the river sufficient to bring it within the scope of Section [90]3(a)." (App. at 12 (citing Pearson v. Jered Brown Bros., et al., 39 Ben. Rev. Bd. Serv. 59 (2005), aff'd on recon. en banc, 40 Ben. Rev. Bd. Serv. 2 (2006)).) Thus, the question to resolve is whether it is sufficient for an "adjoining area" to have a functional nexus with one of the activities enumerated in § 903(a).

18

The Fifth and Ninth Circuits have held that a functional nexus between the site and the maritime activities is sufficient for the location of the injury to satisfy § 903(a) where the facility is used for repair or storage of equipment integral or essential to the enumerated purposes in the Act. Herron, employing a functional relationship test, found that "[a]ll of the machinery and equipment in the Brady-Hamilton gear locker was used exclusively for loading and unloading vessels." 568 F.2d at 141. Thus, the court concluded that an injury suffered in the gear locker, which "was used as an integral part of longshoring operations" including the loading and unloading of vessels, "occurred at a place within the situs requirements of the Act." Id.

Similarly, the Fifth Circuit held that a gear room, housing repair and maintenance equipment for loading and unloading operations, was a part of the on-going overall loading process. Based on this situation, the Court held that the gear room "ha[d] a sufficient nexus to the waterfront" to meet the situs requirement. Winchester, 632 F.3d at 504, 515. More recently, the Fifth Circuit has clarified that its holding in Winchester "teaches that if a particular area is associated with items used as part of the loading process, the area need not itself be directly involved in loading or unloading a vessel or physically connected to the point of loading or unloading." Coastal Prod. Servs. Inc. v. Hudson, 555 F.3d 426, 434 (5th Cir. 2009).

Since the Supreme Court's holding in Caputo, we have not addressed whether a functional nexus is sufficient to satisfy the situs requirement.[6] In Sea-Land v. Dir., Office of

---

[6] In Sea-Land Service, Inc. v. Dir., Office of Workers' Comp. Programs, we suggested that as long as the employment

19

Workers' Comp. Programs, we stated that the key to the *status* determination "is the functional relationship of the employee's activity to maritime transportation[.]" 540 F.2d 629, 638 (3d Cir. 1976). We find it to be consistent with our ruling on status, looking to whether an employee performs work that is integral and essential to the loading process, as well as with the Supreme Court's instruction to construe the statute liberally, Caputo, 432 U.S. at 268, to apply a similar functional nexus test to the situs requirement. The repair work employing loading and unloading equipment in the garage satisfies the functional nexus test and leads us to conclude that the garage is a covered situs.

Consolidation argues that applying the functional nexus test must lead to a different result. Principally, Consolidation posits that Winchester and Herron are distinguishable from this case. It argues that the sites in question in those cases were used exclusively to service equipment used in the loading and unloading process, whereas the garage in this case was used to service all heavy equipment used at Robena, whether or not it related to the unloading or loading of vessels. The Board is correct insofar as it relies on Nelson to hold that *exclusive* use of the garage

_____

nexus, or status, was maintained, the federal compensation remedy should be available. Since that decision, we have acknowledged that "[t]he status and situs tests were subsequently approved by the Supreme Court in Northeast Marine Terminal Co. v. Caputo." Dravo Corp. v. Occupational Safety and Health Review Com'n, 613 F.2d 1227, 1231 n.8 (3d Cir. 1980); see also, Maher, 330 F.3d at166 (3d Cir. 2003); Nelson, 143 F.3d at 794; Rock, 953 F.2d at 60.

20

for an enumerated purposes is not necessary. <u>Nelson</u>, 143 F.3d at 796-97; <u>see also</u> <u>Coastal Prod.</u>, 555 F.3d at 437. Thus, using the functional nexus test, Consolidation's argument that the non-exclusive use of the Robena garage for repair of loading equipment prevents its coverage under the Act is unavailing.

Further, Consolidation asserts that the Terex on which Smith was working when he was injured was itself not used exclusively for loading or unloading. Thus, Consolidation argues that we should instead rely on the Board's decision in <u>Maraney v. Consolidation Coal Co.</u>, 37 Ben. Rev. Bd. Serv. 97 (2003), which held that a mobile equipment operator using a Terex to haul refuse was not covered by the Act. <u>Maraney</u>, however, is plainly distinguishable from this case.

In <u>Maraney</u>, the Board held that an entire maritime facility was not a covered situs under § 903(a). "[W]here a site contains distinct areas used for loading and unloading, and for non-maritime manufacturing purposes, the separate manufacturing area has been held outside the Act's coverage." <u>Id.</u> at 100. Thus, the Board held that the location at issue in <u>Maraney</u>—which "[wa]s merely a repository for slate and slurry, which are by-products of the cleaning process," and which "d[id] not store products destined for vessels"—"ha[d] no functional relationship with the navigable water where employer's unloading/loading operations occur[ed]." <u>Id.</u> at 102. Here, the Board found that the Robena garage had at least some relationship to the loading and unloading process: "The administrative law judge found that the operations of the garage are related in part to the loading process since repairs are undertaken there of equipment essential to the loading and unloading of coal." (App. at 11.) In addition, the ALJ found that "[t]he Terex

21

machine on which claimant was working when he was injured was brought in for repair after breaking down while loading coal onto the de-stock hopper belt," which loaded the processed coal back onto barges located on the Monongahela. (Id.)

These findings are supported by substantial evidence and are more than sufficient to demonstrate a functional nexus between the garage and the loading and unloading activities enumerated in § 903(a), as the garage serviced at least some equipment essential to the loading of coal. This conclusion is reinforced by the Supreme Court's holding that an expansive view of the extended coverage under the 1972 Amendments is proper. Caputo, 432 U.S. at 268.

## IV.  CONCLUSION

We find that Smith's employment satisfies the status requirement and the garage where Smith was injured satisfies the situs requirement of § 903(a). We hold that the Board did not err in determining that Smith's claim fell within the intended scope of LHWCA and we will affirm the Board's decision.

22